## OULTON v. SAVINGS INSTITUTION.

1. Under the 110th section of the internal revenue act of 1864, as amended by the act of July 13th, 1866, taxing deposits in banks, an entry made in the depositor's pass-book of a deposit or payment, is "a certificate of deposit," or "check," or "draft" within the meaning of the section.
2. Under the proviso to that section, savings banks are not exempt from taxation if they have a capital stock, or if they do any other business than receiving deposits to be lent or invested for the sole benefit of the person making such deposits.
3. The fact that, by an agreement between the savings bank and the depositor, money deposited with the bank shall be reimbursed only out of the first disposable funds that shall come into the hands of the bank after demand, being a regulation adopted but for an emergency, and not such as essentially impairs the just claim of a depositor, does not change the case.

ERROR to the Circuit Court for the District of California.

The German Savings and Loan Society, at San Francisco, California, brought a suit in the court below against Oulton, collector of internal revenue, to recover back a tax of $\frac{1}{24}$th

* Bailey v. Hannibal and St. Joseph Railroad Co., Dillon, 176.

of 1 per cent. per month, for moneys deposited in the savings bank during the month of August, 1870.

The case was thus:

The 79th section of the act of June 30th, 1864,* as amended by an act of July 13th, 1866,† enacts:

"That every incorporated or other bank, and every company having a place of business where credits are opened by the *deposit* . . . of money or currency subject to be paid . . . upon *draft, check,* or *order,* OR where money is advanced or *loaned on stocks, bonds, bullion,* bills of exchange or promissory notes . . . shall be regarded as a bank."

The 110th section of the same act as amended in the same way, enacts:‡

"That there shall be levied, collected, and paid a tax of $\frac{1}{24}$th of 1 per cent. each month upon the average amount of the deposits of money, subject to payment by check or draft, or represented by certificates of deposits or *otherwise,* whether payable on demand or at some future day, with any person, bank, association, company, or corporation engaged in the business of banking."

But this section contains a proviso, thus:

"*Provided* that the deposits in associations or companies, known as provident institutions, savings banks, savings funds, or savings institutions, *having no capital stock,* and doing no other business than receiving deposits to be loaned or invested *for the sole benefit of the parties making such deposits, without profit or compensation to the association or company,* shall be exempt from tax on so much of their deposits as they have invested in securities of the United States, and on all deposits less than $500 made in the name of any one person."

With these enactments in force, Oulton, collector of internal revenue at San Francisco, laid the aforesaid tax of $\frac{1}{24}$th of 1 per cent. on the loan and savings institution named.

The society was organized under a statute of California, "to provide for the formation of corporations for accumula-

---

* 13 Stat. at Large, 251.        † 14 Id. 115.        ‡ Ib. 136.

tions and investment of funds and savings," &c.   It had a capital stock of $100,000, of which $60,000 had been paid in cash, the notes of the stockholders being given for the balance.

The capital stock was a part of the security which the depositors had.   After paying expenses, 5 per cent. of the net profit of the bank was set aside for a reserve fund, and then 10 per cent. of the remainder set apart for the stockholders, who did not otherwise share in the dividends.   And the reserve fund and the interest thereon was lent out and disposed of in the same manner as the deposits, and was kept in the same manner as the capital stock, as security for the depositors.

The bank received deposits, lent the money so deposited, and repaid it, together with the dividends arising from the interest on loans, to depositors, in accordance with the terms, conditions, and plans stated in a prospectus issued by the bank to depositors in a pamphlet, and an agreement thereto appended, which every depositor, upon making a deposit, signed.

Among these terms and conditions were these:

"All moneys now or hereafter deposited by me, shall be reimbursable only out of the first disposable funds that shall come into the hands of the corporation, after the date of any demand for the reimbursement thereof, and after payment of all sums for the reimbursement of which demand shall have been made prior to the date of my demand.

"The corporation will only engage to repay depositors when there is money on hand which the board of directors may not deem it necessary to reserve for other payments.

"When there is not money enough on hand to repay all the deposits applied for, the directors shall make no new loans nor investments until there is again sufficient money on hand to meet the current applications; and if the demand shall, in their judgment, become excessive or general, they shall have power to set aside all applications previously made which may not have been satisfied, and to order an apportionment of all the funds, as they may be got in, and at such short intervals as they may

judge proper, among all the ordinary depositors, in proportion to the amount of their deposits."

No money was received on deposit or held otherwise than upon the terms and conditions thus set forth in the prospectus and agreement.

No accounts had ever been opened or moneys received subject to payment on draft, check, or order. When a deposit was made a pass-book was given to the depositor, and *an entry of the deposit made in it* and in the books of the bank. When the money was drawn the depositor presented his pass-book, received his money and signed a receipt for it in the books of the bank, and an entry was made in the pass-book. When the depositor could not appear in person to receive his money, he sent an order with the pass-book, and on the production of the pass-book and order the order was taken as a receipt and pasted in the receipt book in the place of the receipt, and the entry made in the pass-book. No such order was ever paid without a presentation of the pass-book with the order. In practice, although not obliged to do so, the company always intended to keep sufficient money on hand to meet all ordinary calls when made, and it always paid upon call, so long as there was money to do so. There had been one or two occasions when there was a heavy demand for money, and when it had not been able to meet on call all ordinary demands. Loans were usually made on real estate. This was the company's regular mode and business; but when unable to put all the deposits out on real estate, it lent them on other securities, such as mint certificates, bonds of the United States, State bonds, Oakland, San Francisco, and other bonds, San Francisco Gas Company and Spring Valley Water Works Company's stocks. But this was not the regular business of the company, and such loans were but temporary. The company did not lend on bills of exchange, or promissory notes without mortgages, and did not pay out money on drafts or checks. It issued certificates for "term deposits" not transferable, but the certificates were issued subject to the foregoing agreement. The certificate when made out was cut from a correspond-

ing stump, and before delivery the party receiving it signed the receipt upon the stump, showing that it was received subject to the conditions of the said agreement upon which deposits were received.

As conclusions of law, the court found:

1st. That the company received no deposits of money subject to payment by check or draft, or represented by certificates of deposits, or otherwise, payable on demand, or at some future day, within the meaning of the revenue acts of the United States.

2d. That the moneys deposited with it were not subject to the tax assessed thereon and collected by the defendant.

3d. That the plaintiff was entitled to recover.

Judgment being entered accordingly in favor of the company, the collector brought the case here.

*Mr. G. H. Williams, Attorney-General, and Mr. C. H. Hill, Assistant Attorney-General, for the plaintiff in error:*

1. As this bank had a capital stock of $100,000, it does not fall within the proviso of the act of July 13th, 1866, exempting certain savings banks from taxation. In the *Bank for Savings* v. *The Collector** (a case which, though on a former statute, covers the principle of the present one), this court held that, independently of some proviso exempting it, a savings bank, though without any capital and without shareholders or corporators, interested in it or entitled to participate in its profits, was liable to taxation as "a bank." *A fortiori*, a savings bank with a capital stock falls within the rule; and the proviso by expressly excluding from the operation of the body of the section, savings banks with no capital stock, shows that savings banks having a capital stock fall within it.

2. As the bank set aside nearly 10 per cent. of the net profits for the stockholders, who furnished the capital, it did other business than receiving deposits "to be loaned or invested for the sole benefit of the parties making such de-

---

* 3 Wallace, 495.

posits without profit or compensation to the association or company." It was in fact carried on as much for the profit and benefit of the stockholders as of the depositors. Indeed if the company had large deposits and did much business, it would have been carried on much more so.

3. The deposits made in this bank were deposits " subject to payment by check or draft, or represented by certificate of deposit or otherwise," within the meaning of the statute. The entry in the pass-book was a " certificate of deposit." If not, the deposit was represented by *it*, otherwise than by such certificate.

*Messrs. J. R. Jardoe and C. E. Whitehead, contra :*

1. The intention of Congress was to impose a tax upon capital engaged in what is commonly known as " banking."

No interest is paid by ordinary banks on moneys deposited with them. All the profits belong to the bank. Interest, however, *is* paid in savings banks to their depositors. Ordinary banks make vast profits from their deposits ; because, unlike savings societies, they pay nothing for the use of them. Therefore, the act to tax bank capital provides a tax upon all such deposits as were represented in the hands of the depositors by certain designated certificates, " *or otherwise*," meaning by any other means which could possibly make the depositor a holder or user, or give him credit upon the moneys which were deposited with the bank. Ordinary banks derive great profits from them, and to such banks, the only ones that do make great profits, the provision should be confined.

2. This company was not a bank, nor engaged in the business of banking within the meaning of the act. To render a company liable as a bank it must be a corporation engaged in the business of banking, and holding *deposits* subject to *payment* by check, draft, or otherwise.

This society received deposits which it lent out for the benefit of the depositors, giving the depositors all the net profits. These deposits were in nowise payable to the depositors by the bank, except when the loan should be paid

in by the person to whom it might be lent. The bank had neither circulation, checks, drafts, certificates of deposit, or exchange. It was simply a trustee to invest. Such institutions have been decided not to be banks in legal language.*

The provisions of contracts between these saving institutions and their depositors have been held to be strictly enforceable even to their smallest detail.†

It is clear, therefore, from the provisions of these contracts that no depositor could ever maintain an action for debt or in assumpsit upon these contracts; nor has he any money with either of these banks which is *ex necessitate* payable at any time either on check, draft or order, or is represented by certificate of deposit, *or otherwise.*

These banks, therefore, occupy an anomalous position, and one clearly not contemplated by the revenue act. In them the depositors receive the profits and bear the risks of the business, and in so doing occupy a position different from that held by any other class of persons known to the law. If A. deposit with a bank of California, his claim is good whether the bank wins or loses by its management of his funds; but if he deposits with a company like this one, he has no claim for recovery if the company shall lose its money by untoward circumstances, national bankruptcy, or any cause that may produce a fall in commercial values. Thus the *Bank of Savings* v. *Collector,* cited by opposing counsel, is not in point. The plaintiff in that case,‡ *could be called on* to make *payments* on four stated days in the year, and therefore four times in each year an action at law would lie against it; it therefore held money payable at some *future time,* and its funds were repayable on *draft.* The case was put by the court on the very point of *obligation of repayment.*§ Our banks, as we have seen, hold no funds payable by draft, or otherwise, and none of which it can absolutely be predicated that they will ever be repaid.

---

* State of Louisiana *v.* The Louisiana Savings Co.. 12 Louisiana Annual, 572.

† Wall *v.* Provident Institution for Savings, 3 Allen, 96; S. C., 6 Allen, 321; Warhus *v.* Bowery Savings Bank, 5 Duer, 67; S. C., 21 New York, 546.

‡ See page 497.                    § See page 512.

Again; it would seem plain that the general enactment in section 110 does not impose a tax upon this society. Reliance has to be had on the proviso in the same section. But when you resort to the proviso you can impose the tax only by implication. Now you cannot lawfully so impose a tax. A proviso does not enlarge the powers of a statute,* and any man who will bring an action for a penalty under an act of Parliament must show that he is entitled thereto under the enactory clauses.† If a statute imposed a tax on all dwelling-houses and stores, and if a proviso exempted all manufactories where steam was used, this would not make manufactories where steam was not used liable, nor indeed make anything liable except what the statute declared should be liable.

Mr. Justice CLIFFORD delivered the opinion of the court.

Associations engaged in moneyed transactions, whether incorporated or not, having a place of business where credits are opened by the deposit or collection of money or currency, subject to be paid or remitted upon draft, check, or order; or where money is advanced or loaned on stocks, bonds, bullion, bills of exchange, or promissory notes; or where stock, bonds, bullion, bills of exchange, or promissory notes are received for discount or for sale, are regarded as banks, subject to taxation, under the internal revenue laws which were in operation when the taxes in controversy in the present suit were assessed and collected; but the same section which created the liability and authorized the assessment of the taxes, also provided that savings banks, having no capital stock and doing no other business than receiving deposits to be loaned or invested for the sole benefit of the parties making such deposits, without profit or compensation to the association or company, shall be exempt from tax on so much of their deposits as they have invested in securities of the United States, and on all deposits less

---

* Dwarris on Statutes, 515; Sedgwick on Statutory Law, 62. .
† Spieres *v.* Parker, 1 Term, 145; 1 Kent, 463.

than five hundred dollars made in the name of any one person.*

Such taxes as are authorized by that act, to the amount of $2697.84, were assessed against the plaintiffs by the assessor of the district, and the record shows that they paid the same under protest to the collector of the same district, and that they instituted the present suit in the State court to recover back the amount, which was duly removed, on motion of the defendant, into the Circuit Court. Due appeal, it appears, was taken by the plaintiff from the decision of the assessor levying the tax to the commissioner, and the commissioner affirmed the action of the assessor and decided that the tax was legally assessed.† Service was made, and the defendant appeared and filed an answer, which amounted to the general issue, and prayed to be dismissed with judgment against the plaintiffs for his costs, which is a motion in the nature of a demurrer. Hearing was had before Mr. Justice Field, and he denied the application, holding that the plaintiffs, if they proved *all* of the allegations of their complaint, would be entitled to recover. Leave was subsequently granted to the defendant by the circuit judge to amend his answer, and he accordingly filed the amended answer which is exhibited in the record. Evidence was taken, and the parties, having waived a jury, submitted the case, law and fact, to the determination of the court, and the court rendered judgment in favor of the plaintiffs for the whole amount claimed in the declaration, and the defendant sued out the present writ of error.

Three errors are assigned by the present plaintiff, in substance and effect as follows: (1.) That the bank is not within the proviso exempting certain savings banks from such taxation, as the bank had a capital stock of $100,000, as stated in the finding of the Circuit Court. (2.) Because the bank did other business than receiving the deposits to be loaned or invested for the sole benefit of the depositors, without compensation to the association or company. (3.) Because

* 14 Stat. at Large, 115; Ib. 137.  † Ib. 152.

the deposits made in the bank are deposits subject to payment by check or draft, or represented in a way to bring the bank within the operation of the body of the section imposing the tax.*

Unrestrained by the proviso, it is quite clear that the bank would fall within the body of the section and be subject to the tax which the section levies, as the managers of the institution have a place of business where credits are opened *by deposit*, or collection of money or currency, subject to be paid or remitted by check or draft, or represented by certificates of deposit. Attempt is made to controvert the proposition that the money deposited is represented by certificates of deposit, or that it is subject to check or draft, but it is quite clear that the pass-book furnished to the depositor performs the same office as the certificate, check, or draft, as between the person making the deposit and the bank, showing to the entire satisfaction of the court that the evidence brings the bank within the material words of the section, and that the framers of the act intended to recognize the well-known fact that there are banks of deposit without authority to make discounts, or to issue a circulating medium.

Banks in the commercial sense are of three kinds, to wit: 1, of deposit; 2, of discount; 3, of circulation. Strictly speaking the term bank implies a place for the deposit of money, as that is the most obvious purpose of such an institution. Originally the business of banking consisted only in receiving deposits, such as bullion, plate, and the like, for safe-keeping until the depositor should see fit to draw it out for use, but the business, in the progress of events, was extended, and bankers assumed to discount bills and notes and to loan money upon mortgage, pawn, or other security, and at a still later period to issue notes of their own intended as a circulating currency and a medium of exchange instead of gold and silver. Modern bankers frequently exercise any two or even all three of those functions, but it is still true that an institution prohibited from exercising any more than

---

* 14 Stat. at Large, 136.

one of those functions is a bank in the strictest commercial sense, and unless such a bank is brought within the proviso under consideration, is equally subject to taxation as if authorized to make discounts and issue circulation as well as to receive deposits.*

Tested by these considerations it is clear that the judgment must be reversed unless it appears that the bank is within the proviso to the section which imposes the tax, and such was the decision of this court in a case involving the same question, though it arose under the prior act of Congress levying internal revenue duties.

Two propositions were decided in that case, which are directly applicable to the case before the court, and the court is of the opinion that the same principles should be applied in the present case.   They are as follows:

1. That savings banks which receive deposits and lend the same for the benefit of their depositors, if the bank is under obligations to repay the amount when demanded, agreeably to their by-laws and charter, whether upon check, draft, or certificate of deposit, are engaged in the business of banking within the meaning of the body of the section imposing the tax, though the bank has no capital stock and does no other business of banking.

2. That savings banks, described in the proviso and thereby exempted from taxation, became subject to the duty imposed by the body of the section on the repeal of the proviso, though they had no capital stock, and neither made discounts nor issued currency as circulation, nor transacted any business of banking except to receive deposits, loan the same for the benefit of the depositors, and repay the amount as aforesaid in pursuance of their by-laws and charter.†

Apply those rules to the present case, and it is evident

---

* Bank for Savings v. Collector, 3 Wallace, 510; Angell & Ames on Corporations (9th ed.), § 55; Insurance Co. v. Ely, 2 Cowan, 678; McCulloch's Commercial Dictionary, 73–146; Duncan v. Savings Institution, 10 Gill & Johnson, 309; People v. Utica Insurance Co., 15 Johnson, 390; Grant on Banking, 1–6, 381–614.

† Bank for Savings v. Collector, 3 Wallace, 512.

that the only inquiry open is whether the plaintiff bank is exempted by the proviso from the taxation which the body of the section imposes.

Savings banks are not exempt from such taxation, except in certain cases, nor are any entirely exempted unless they have invested the whole of their deposits in the securities of the United States, if any of the deposits made in the name of one person amounted to, or exceeded, $500. Deposits in sums less than $500, and all such as are invested in the public securities, if the bank falls within the category described in the proviso, are exempt from such taxation, but every savings bank which does not fall within the category described in the proviso, is subject to taxation the same as any other bank coming within the purview of the act imposing the tax.

Such banks are not exempt from such taxation if they have a capital stock, nor if they do any other business than receiving deposits to be loaned or invested for the sole benefit of the person making such deposits. Both of those conditions are expressed in plain and unambiguous terms, and the law-makers, as if to place the second beyond cavil, provided not only that the deposits should be loaned or invested for *the sole benefit* of the depositors, but added, " and without profit or compensation to the association," showing beyond controversy that Congress did not intend to exempt any savings banks from such taxation, except such as were devoted to charitable purposes and were managed solely for the benefit of the indigent, or of persons of small means.

Savings institutions undoubtedly exist which were established *solely* for charitable purposes, and many of them are conducted in the spirit in which they were established, as a means of benefiting the indigent, and it is plain that Congress intended to exempt all such from the taxation imposed by the body of the section, but it is equally well known that there is another large class of such institutions which are doing an extensive and profitable business, and being the depositories of vast sums of money are earning large profits,

which are as justly subject to taxation as the profits of any other banking corporation in the country.

Power to lay and collect taxes is vested in Congress, and Congress has enacted to the effect that all banks, except such as fall within the category described in the proviso under consideration, shall be subject to the tax imposed by the body of the section, and it is clear that the plaintiff bank does not come within either of the two conditions specified in the proviso, both of which must concur in order that the bank may claim to be exempt from the tax.

Argument to show that the bank does not come within the first condition is certainly unnecessary, as it is admitted that the bank has a capital stock of $100,000, of which $60,000 has been paid in cash, and that the bank holds the notes of the shareholders for the residue, the capital stock being a part of the security held for the benefit of the depositors. Five per cent. of the net profits of the bank is set aside as a reserved fund, and ten per cent. of the remainder is set apart for the stockholders who do not otherwise share in the dividends.    It also appears that the reserved fund and the interest thereon is loaned and invested in the same manner as the deposits, and like the capital stock is kept as a security for the depositors; that the bank receives deposits, lends the money deposited and repays it, together with the dividends arising from interest, in accordance with the terms and conditions stated in a prospectus issued by the bank to the depositors and an agreement thereto appended, which are exhibited in the record.    Every depositor upon making a deposit signs the agreement, and no money is received on deposit or held otherwise than upon the terms and conditions set forth in the prospectus and agreement.    Accounts have never been opened nor moneys received subject to payment on draft, check, or order, nor has the bank ever issued certificates of deposit, except such as were temporary, to give time to a depositor to determine whether he will make a term deposit or one subject to be drawn when wanted. When a deposit is made a pass-book is given to the depositor and an entry of the deposit is made in it *and in the books of the*

*bank,* and the money is drawn out by the depositor *on pre-senting the pass-book* or by a person *holding his order.* Money sufficient to meet all ordinary demands is always intended to be kept on hand, and the bank always pays money upon calls, and it appears that there has never been a time since the bank was organized that it was not able to meet all ordinary demands. Generally the bank asks the depositor to give a day or more notice on large amounts, but the managers have never found it necessary to make any rule upon the subject. Loans are usually made on security of real estate, but in some cases upon bullion or personal property, nor are any loans made upon bills of exchange, promissory notes, or other evidences of private indebtedness. Prompt payments have always been made, but the agreement contains the stipulation that money deposited with the bank shall be reimbursed only out of the first disposable funds that shall come into the hands of the bank after demand; and the defendants refer to that provision as distinguishing the case from the prior decision of this court, but the court is of the opinion that the proposition cannot be sustained, as the regulation is evidently one adopted merely for an emergency, and that it was never intended to control the general dealings of the bank with its depositors. Money deposited in such a bank by one of its customers becomes a debt for which the bank is liable, and it cannot be admitted that the managers could lawfully adopt any rule which should postpone its payment indefinitely.* They may, doubtless, make any reasonable rule under that stipulation to enable them to raise means for such an extraordinary occasion, but they could not refuse payment altogether or provide for such delay as would essentially impair the value of the just claim of a depositor. Throughout, the amount of the deposit would continue to be a debt due to the depositor, demandable of the bank on presenting the pass-book, under such reasonable regulations as the bank or its managers may adopt.

---

* Thompson *v.* Riggs, 5 Wallace, 678; Marine Bank *v.* Fulton Bank, 2 Id. 252.

Prior regulations had been made in the reported case containing our former decision which gave the depositor the right to make such demand at four stated periods in the year, but in the case before the court no regulation upon the subject has been adopted other than what appears in the written agreement, which has never been enforced. Whether it ever will be or not is a matter which cannot be known, nor is such an inquiry of any importance in the present case, as the court is of the opinion that the stipulation, inasmuch as it has never become operative, cannot avail the plaintiffs in this controversy.

Beyond all question the bank has capital stock, and inasmuch as 10 per cent. of it is set apart for the stockholders, it is not correct to say that the business which the bank does in receiving deposits and loaning and investing the same is done without compensation to the association.

Viewed in the light of these suggestions it is clear that the bank does not fall within the category described in the proviso, and that the tax was legally assessed and collected.

JUDGMENT REVERSED, and the cause remanded with directions to issue a NEW VENIRE.