## In re TROY STEAM LAUNDERING CO.

### (District Court, N. D. New York. September 17, 1904.)

1. BANKRUPTCY—MANUFACTURING CORPORATION—LAUNDERING OF NEW AR-
TICLES.

    A corporation conducting a laundry, the largest part of its business
being the washing, starching, ironing, and polishing of collars, cuffs, etc.,
for manufacturers, before they are put on the market, is engaged prin-
cipally in manufacturing, and is subject to proceedings in involuntary
bankruptcy.

    In Bankruptcy. Involuntary proceeding to have the Troy Steam
Laundering Company adjudicated a bankrupt.

    Betts & Draper, for petitioners.

    Frank H. Deal and Thomas H. Guy, for alleged bankrupt.

    RAY, District Judge. The alleged bankrupt is a corporation incor-
porated under and pursuant to the laws of the state of New York. It
is conceded that this corporation is insolvent, and has committed acts
of bankruptcy which entitle the petitioners to an adjudication, if, within
the bankruptcy law, the corporation may be adjudicated a bankrupt.
The company, a petition having been filed against it, denies that it is
within the provisions of Bankr. Law July 1, 1898, c. 541, 30 Stat. 544
[U. S. Comp. St. 1901, p. 3418].

    The case is submitted upon an agreed state of facts as follows:

    "The Troy Steam Laundering Company was organized with a capital of
$25,000 under the laws of the state of New York, in 1892, and its object, as
stated in the certificate of incorporation, was 'to carry on the laundry business
in all its branches; the nature of such business is laundering or washing and
ironing clothing, cloths, linens, and other articles.' Said company immediately
began its business in the village of Green Island, in the county of Albany, New
York, by having constructed a large laundering plant, and which represented an
investment of its entire capital. Said company continued to carry on its busi-
ness as stated in its charter until February, 1901, when its object was extended
so as to include 'the right to purchase, manufacture, and sell shirts, drawers,
collars, cuffs, shirtwaists, neck wear, and other garments for men, women, and
children.' The capital of the company was extended from time to time until
$51,000 of its capital stock was issued, and the whole of this $51,000 was
invested by it in its plant, in addition to $40,000 of a bonded debt, and in ad-
dition to a surplus which it accumulated from time to time; so that at the
time of the institution of these proceedings the amount invested in real estate,
plant, and machinery was about $105,000. Under such extension of its object
said company for a short time engaged in the manufacture of shirts, in experi-
mental stages only, and, finding it unprofitable, ceased such manufacture, and
has not engaged in it in any way since the summer of 1901. The business car-
ried on by the corporation down to the time of the filing of the petition herein
and since its incorporation in 1892 has been the washing, ironing, and launder-
ing of shirts, collars, cuffs, and shirtwaists for manufacturers, and of all
kinds of wash garments for private persons and householders, and the capacity
of the said company's plant is from 3,500 to 4,000 dozens of collars or cuffs
per day for manufacturers; also from 50 to 75 dozens of shirts per day for
manufacturers; and also its custom work. In such business the company em-
ployed machinery which cost about $60,000, and consists of boilers, engines,
washing machines, drying machines, drying rooms, starching machines, and

---

    ¶ 1. What persons are subject to bankruptcy law, see note to Mattoon Nat.
Bank v. First Nat. Bank, 42 C. C. A. 4.

ironing machines. The process involved the purchase and use of coal for steam power and drying purposes, and of electric power for operating the machinery, and of large quantities of soap, bluing, chemicals, and starch for the washing and laundering, and annually there is expended in this process, including labor, about $70,000. The total number of shirts, collars, cuffs, and shirtwaists manufactured in the city of Troy is about one hundred thousand dozen per day. Many of such manufacturers conduct their own laundry plants in connection with their manufacturing plants. Such articles are usually washed and laundered before they are sold to the jobbers or retailers, although unlaundered goods are also sold when specially ordered. Manufacturers who have no laundry plants of their own have their products washed and laundered in laundries like that of the alleged bankrupt. The business conducted by the alleged bankrupt averaged since 1901 not less than 1,700 dozens per day for manufacturers, at not less than 10½ cents per dozen, or about $1,600 per week; while the maximum would be as high as 3,000 to 3,500 dozens per day. The general average of such manufacturers' work has, however, gradually decreased, owing to the general dullness of the trade, and in spite of the efforts and willingness of the alleged bankrupt to hold such business, until during the past six months the income from the manufacturers' work about equaled the income from custom work. The custom or work for nonmanufacturers, and which consists of washing and ironing articles already in use, has averaged from $300 to $600 per week at all times since 1901, with a maximum of $720 per week. The plant of alleged bankrupt cannot be maintained without $600 per week income from custom work in addition to about $1,000 per week from manufacturers' work, in order to pay expenses on operation and fixed charges of such plant."

It appears that in its articles of incorporation, filed July 20, 1892, the object of the corporation is declared to be "to carry on the laundry business in all its branches; the nature of such business is laundering or washing and ironing clothing, cloths, linens, and other articles." March 2, 1901, for the purpose of extending the business and powers of said corporation, an amended certificate was filed, in which it was declared, among other things, "that the extension of business powers and rights proposed is the inclusion of the right to purchase, manufacture, and sell shirts, drawers, collars, cuffs, shirtwaists, neckwear, and other garments for men, women, and children." It appears that the principal business in which the alleged bankrupt was engaged was the laundering —that is, the washing, starching, ironing, and polishing—of collars, cuffs, etc., for the manufacturers of those articles, prior to their being put upon the market. The alleged bankrupt has over $100,000 invested in its plant, machinery, etc., and has done a very large business. It has also done some custom work in laundering. In carrying on its business the company has purchased for use therein, and has used, large quantities of soap, etc., bluing, starch, etc. These articles are not purchased for resale, or to be worked over into other forms or articles for sale, but simply for use in cleansing, coloring, and giving form and polish to collars, cuffs, etc.; that is, in putting on them the finishing touches for market. This company was not engaged in mercantile pursuits or business. Was it engaged principally in manufacturing? This court thinks it was. To come within the provisions of the bankruptcy law as a manufacturer, it is not necessary that the corporation itself perform every operation with or upon the so-called raw material necessary to produce the completed article. It is all-sufficient if it do any one of the several acts necessary to produce such manufactured article in its completed form. Should a corporation be engaged principally in polishing hoes, hammers, or other farming or mechanical

tools for those who make such tools for use or sale, it would be as much engaged in manufacture as those who take the prior steps in forming and shaping the iron and wood into the articles named. The doing of anything necessary to produce the completed article of manufacture is manufacturing. It appears that the completed collar and cuff, etc., are usually washed, starched, and ironed as a part of the process of manufacture. Who will deny that the one who polishes hammers in a hammer factory, or for the manufacturer of hammers, prior to such articles being put on the market, is engaged in manufacturing? The grinding and polishing department may be one by itself, and the fact that this final touch is called "polishing" does not take it out of the realm of manufacturing. Neither does the fact that the process of starching and ironing,.etc. (polishing), collars, cuffs, etc., is called "laundering," take that work out of the field of manufacturing. It is a part of manufacture, by whatever name called, when done in connection with and as a part of the finished manufacture of the article. Of course, all laundering is not manufacturing, nor is all polishing manufacturing. He who polishes a rusty edge tool that has been in use is not engaged in manufacturing, nor is the laundryman who merely washes, starches, and irons clothing, etc., worn and in use, engaged in manufacturing. The court does not hold that all laundering is manufacturing, or that all laundrymen are manufacturers, but that, when laundering is done as a necessary or essential part of manufacturing, the firm, individual, or corporation who does such laundering is engaged in manufacturing within the intent and meaning of the bankruptcy act. A corporation might be formed for the purpose of doing a manufacturing business, and it might confine its work to the mere cutting of linen into shape for sewing so as to form collars, cuffs, etc. The corporation completes nothing—produces no manufactured article—still it is engaged in manufacturing, and nothing else.

The case of In re White Star Laundry Company, 117 Fed. 570, 9 Am. Bankr. R. 30, is not in conflict with these views. There it sufficiently appears, and is the fair inference from the statement of the case, that the company was engaged simply in the washing, starching, and ironing of clothing in use by the wearers thereof, not in putting the finishing touches or polish on the manufactured clothing to fit it for market prior to its going into use.

In White Mountain Paper Co. v. Morse, 127 Fed. 643, 11 Am. Bankr. R. 633, the corporation was organized for the purpose of the manufacture and sale of paper made from wood pulp. The company had purchased large tracts of timber land, erected mills, etc., and had cut some timber for the purpose of making it into wood pulp, but had neither made pulp nor paper; but the Circuit Court of Appeals, First Circuit, held that it was engaged in manufacturing. This case is cited and approved in Matter of the Marine Construction and Dry Dock Co. (2d Circuit) 130 Fed. 446, 11 Am. Bankr. R. 640. See, also, In re Niagara Contracting Co., 127 Fed. 782, 11 Am. Bankr. R. 643.

The views here expressed regarding the case at bar are not in conflict with anything decided in Dudley v. J. P. A. Co., 100 Mass. 183, or in People ex rel., etc., v. Roberts, 155 N. Y. 408, 50 N. E. 53, 41 L. R. A. 228, or other similar cases. Nor should we be guided by the same

rule in construing the bankruptcy law we would follow in construing corporation tax laws.

The result is that the petitioners are entitled to the usual order or judgment adjudicating the Troy Steam Laundering Company a bankrupt, and the matter will be referred to Mr. King, referee in bankruptcy, residing in Troy, Rensselaer county, N. Y.

So ordered.