### GAMBLE v. DANIEL. *
### GREENFIELD v. PETERS TRUST CO.
#### Nos. 8798, 8800.

Circuit Court of Appeals, Eighth Circuit.
March 14, 1930.

*Appeal dismissed 50 S. Ct. 464, 74 L. Ed. ——.

448

F. A. Brogan, Edgar M. Morsman, Jr., and D. W. Swarr, all of Omaha, Neb., and C. A. Sorensen, Atty. Gen., of Nebraska, for appellant Gamble.

William Ritchie, Jr., of Omaha, Neb. (E. R. Burke, of Omaha, Neb., on the brief), for appellant Greenfield.

Arthur F. Mullen and Paul L. Martin, both of Omaha, Neb., for appellees Daniel and Peters Trust Co.

Before STONE, VAN VALKEN-BURGH and GARDNER, Circuit Judges.

STONE, Circuit Judge.

The Peters Trust Company is incorporated under the statute of Nebraska and engaged in business in that state. On November 23,

1929, a resolution of its board of directors and a statement of its financial condition were filed with the department of trade and commerce of the state—these alleged and purported to show insolvency. Thereupon, the above department filed a petition in a state trial court praying that the company be enjoined from further transacting business, that it be adjudged insolvent, and that the department "be appointed and directed to wind up the business of said defendant." On November 25, 1929, that court entered a decree, as follows:

"That the said Peters Trust Company, defendant, is hereby declared to be insolvent and its business shall be forthwith wound up by the Department of Trade and Commerce of the State of Nebraska as the liquidating agent subject to the orders of this Court as provided for in House Roll No. 249, being chapter 38 of the Session Laws of Nebraska for 1929 and that said Department of Trade and Commerce shall be vested with title to all of the assets and property of said defendant corporation wheresoever the same may be situated and of whatsoever kind and character, the said assets and property may be as of the date of the filing of said petition of plaintiff in this Court and any attachment liens against the property of said defendant corporation acquired within thirty days next preceding and filing of this action shall be and hereby are released and dissolved."

Under this order, the books, accounts, and all property owned or held by the company were turned over to the department. The above procedure was under statutes of the state which will be hereinafter discussed.

November 27, 1929, three creditors of the company filed their petition to have the company adjudicated a bankrupt. December 6, 1929, appellant Gamble was appointed "liquidating agent" of the Department and the property turned over to him for administration under the state statutes. On December 10, 1929, occurred the following: The company filed its petition to be adjudicated a bankrupt; it was adjudicated a bankrupt thereon; there was a reference; appellee Daniel was appointed receiver; and the receiver presented a form of order to the judge of the state court requiring delivery to him by the department of all of the property taken over by it from the company, which order the judge refused to make. Subsequent proceedings in the state court resulted in an order denying such transfer to the receiver. Thereafter, the receiver filed, in

the bankruptcy court, a petition to require Gamble and other officers, employees, and agents of the department to deliver to him all of such property (including that held by the bankrupt "as trustee, custodian or otherwise"), and for related relief. Gamble filed a return thereto. Therein he sets out that the company had, for some years, been receiving deposits, some subject to order of the depositors and others for which it issued interest-bearing certificates of deposit, had been discounting commercial paper, and, in other specified respects, acting as a bank; that it acted as trustee (both revokable and not revokable by the creator of the trust), administrator, executor, and guardian, and as agent or custodian of property belonging to others; that the property held by it as trustee, administrator, executor, or guardian was physically segregated in a separate department of the business of the company with complete set of records and books of account relating thereto; that the just mentioned properties were not in possession of the company at the commencement of this bankruptcy proceeding, but "were, and are now, under the control of State authorities representing the owners of the property, and not subject to the control of the bankruptcy courts"; that property owned by the company or that held, as agent or custodian, was, at the commencement of the bankruptcy proceeding, in possession and control of the department of trade and commerce under state laws "providing for the liquidation of a banking corporation * . * * and is not subject to the jurisdiction of the courts of bankruptcy"; that he had been appointed receiver of the "trust assets" by the state court, but had not taken possession; that he held possession as "liquidating agent" for the department of trade and commerce; that "as to property sufficient to cover all expenses incurred in the administration" under the laws of the state he "is an adverse claimant and objects to the jurisdiction of this court to summarily order the delivery of said assets to a receiver in bankruptcy as against this adverse claim."

The court found the petition sufficient, the return as stating no justification, and entered an order requiring Gamble to give immediate possession to the receiver of all property, including that which had been held by the company "as trustee, custodian or otherwise." This appeal is from that order.

The issues here are as follows:

I. Is this company a "banking corporation" within the meaning of the Bankruptcy Act?

II. Has the bankruptcy court jurisdiction to require, by summary order, return of the property not owned by the company but held by it as trustee, administrator, executor, guardian, agent, or custodian?

## I.

■ Section 4 of the Bankruptcy Act, as amended by the Act of June 25, 1910 (36 Stat. 838, 839 [11 USCA § 22]) excepts "banking corporations" from voluntary or involuntary bankruptcy. The questions here are the construction of the words "banking corporation" as used in the amended act and the application of those words, so construed, to the situation in this case. The most natural meaning of the words is: A corporation empowered to do a banking business. Whether a corporation empowered to do a banking business and also other character of business, but actually doing no banking business, is included, we need not determine, as that situation is not here present. The contentions of appellant are that there was the power to do a banking business, and, also, that the company was actually doing a banking business. The latter contention may be rather shortly dealt with. First, it would be strange if Congress would permit the classification under section 4 (and, therefore, the application of the entire Act) to be controlled by the exercise of ultra vires powers by a corporation. Second, a comparison of the Amendment of 1910 (the present section) with similar sections in previous bankruptcy legislation shows a deliberate departure from the "business carried on" criterion.[1] Third, the reason for the amendment of section 4, in 1910 was stated by its author to be to escape the confusion which had arisen in decisions as to construction and application of the words "engaged principally" in the 1898 act—as instances of such decisions compare In re Niagara Contracting Co. (D. C.) 127 F. 782 with In re MacNichol Construction Co. (D. C.) 134 F. 979; In re Barton Hotel Co., 12 A. B. R. 335 with In re Baird (D. C.) 112 F. 960; In re Troy Steam Laundering Co. (D. C.) 132 F. 266 with In re White Star Laundry Co. (D. C.) 117 F. 570; In re New York & W. Water Co. (D. C.) 98 F. 711 with First Nat. Bank v. Wyoming Valley Ice Co. (D. C.) 136 F. 466; and see Cong. Rec. vol. 45 p. 2276. It was to escape

[1] Section 1 of the Act of 1800 (2 Stat. 19, 20) is any one "*actually using* the trade of merchandise, by buying and selling in gross," etc. The Act of 1841, § 1 is similar. 5 Stat. 440, 441. The act of 1867 was more general. The 1898 act, § 4 (30 Stat. 544, 547), allowed involuntary bankruptcy as to "any corporation *engaged principally* in manufacturing, trading," etc.

this confusion and uncertainty that the amendment "adopted the scientific way of declaring a class and then stating exceptions to the class." Cong. Rec. vol. 45 p. 2275. We have no doubt that when Congress used the words "banking corporations" it meant corporations which were authorized by the laws of their creation to do a banking business.

■ Even if such be the proper construction of the above words in the Bankruptcy Act, appellant contends that "banking business," within the act, means the doing of any one of the essential or the usual things banks do —such as discounting commercial paper, making loans, buying and selling commercial paper—and that this company was empowered to do several of these, and therefore is within the section. When Congress spoke of "banking corporations" it spoke as of 1910. It used the words in no technical nor special sense, but as they were then ordinarily understood. As that time, the ordinary conception of a bank was of a business which was based primarily on the receipt of deposits (general or special), which deposits were used by the bank for loans, discounts, buying and selling commercial paper, and other business purposes. None but national banks could then issue bank notes as currency. The prime incentive in engaging in the business was the profit to be made, directly or indirectly, from use of deposits. Most of the then existing state legislation concerning banks had as its principal purpose the protection of such depositors. Much of the right to regulate banks was the public interest in protecting depositors. Banking has been a development, and the above was its status in 1910. Other businesses might and did, and still do, deal in commercial paper, make loans or borrow money without any one thinking of them as banks. When a business takes deposits and then does the above or related things, every one knows it is doing a banking business. As far back as Oulton v. German Sav. & L. Soc., 17 Wall. 109, 118, 21 L. Ed. 618, it was said: "Strictly speaking the term bank implies a place for the deposit of money, as that is the most obvious purpose of such an institution." Also see further discussion in that opinion (page 119 of 17 Wall., 21 L. Ed. 618) where deposits are emphasized and, also, Bank for Savings v. Collector, 3 Wall. 495, 512, 18 L. Ed. 207. Also see Auten v. U. S. Nat. Bank, 174 U. S. 125, at pages 141 and 142, 19 S. Ct. 628, 43 L. Ed. 920; Morse on Banks and Banking (6th Ed.) §§ 2 and 3. It is also suggestive that the amendment of 1874 (18 Stat. 178,

180) to section 39 of the act of 1867 (under which bankers were subject to bankruptcy) added as an act of bankruptcy "who, being a bank or banker, shall fail for forty days to pay any depositor upon demand of payment lawfully made" (page 181). In short, while there may be other attributes which a bank may possess, yet a necessary one is the receipt of deposits which it may use in its business. Without attempting a full definition of these words used in this section of the Bankruptcy Act (as amended), this necessary element of deposits is stressed because it is important in this case.

■ Having in mind the above construction of the words in the Bankruptcy Act, we turn to the statutes of Nebraska to ascertain the powers of this company. In such examination we are not bound by terminology, but are seeking to ascertain the actual powers granted. This examination has to do with articles 17 and 19 of title 5 of the Compiled Statutes of Nebraska for 1922 and certain subsequent amendments to the latter article. While this company was organized in 1907, it subsequently amended its charter in conformity with article 19. Article 17 is entitled "Banks" and covers the organization, powers, regulation, and dissolution of corporations defined therein. Section 7983 declares "Banking a quasi-public business" subject to State control and regulation. It defines "business of banking" as "the receiving of deposits of money or instruments of credit subject to be repaid upon check, draft, certificate, passbook or order; the discounting, negotiating of promissory notes, drafts, bills of exchange, and other evidences of debts; and the loaning of money upon personal or other security is hereby declared to be a quasi-public business and subject to regulation and control by the state."

Appellants construe this definition to mean that to engage in any one of the above clauses constitutes "banking business." It is doubtful if such construction is tenable, but the use of the term in this section is in connection with a mere declaration of power and not intended as a definition of the term as used in the regulation prescribed by this article. Section 7985 thereof defines the meaning of "bank" or "banking corporation" as used in the article. It divides banks into three classes, "commercial banks," "co-operative banks," and "savings banks." Each of these is a bank for receiving deposits in some form. Section 7989 has to do with the taking over of banks by the department of trade and commerce. This may be done

if the bank is insolvent or conducting its business in an unsafe or unauthorized way "or is endangering the interests of its depositors." There is a similar provision in section 8029 dealing with appointment of receivers of banks. Section 8003 bases amount of required cash reserves on deposits. Section 8005 regulates interest on deposits. Section 8010 forbids receipt of deposits when insolvent. Section 8019 deals with certification of checks of depositors. Section 8024 provides a guaranty fund "for the protection of depositors in banks"; to provide which, "every corporation engaged in the business of banking under the laws of this state" is subject to assessment. In carrying out such assessment, section 8025 requires reports, showing the average daily deposits, to be made semiannually by "every corporation engaged in banking under the provisions of this article." Section 8033 gives priority to depositors in payments from banks in receivership. Section 8047 and section 8050 regulate payments to joint depositors and liability on forged, altered, or raised checks. The above, and other sections in this article, clearly show that some form of deposits was contemplated as an integral part of the business of "banks," as intended by this article.

Article 19 is entitled "Trust Companies." It deals with the organization, power, regulation, and dissolution of the character of corporations described therein. That character is shown in the statement of the powers of such companies, to be found in section 8068 (also see section 8073). The entire section is in the footnote.[2]

---

[2] § 8068. Specific powers. Corporations created under the provisions of this article shall have power:

"1. To receive trust funds for investment or in trust upon such terms and conditions as may be agreed upon, and to purchase, hold and lease fire and burglar proof and other vaults and safes from which a revenue may be derived;

"2. To accept and execute all such trusts as may be committed to them by any corporation, person, or persons, and to act as assignee, receiver, trustee and depositor, and to accept and execute all such trusts as may be committed or referred to them by order, judgment or decree of any court of record;

"3. To take, accept and hold by the order, judgment or decree of any such court, or by gift, grant, assignment, transfer, devise or bequest, any real or personal property in trust; to care for, manage and convey the same in accordance with such trusts; and to execute and perform any and all such trusts;

"4. To act as agent or attorney-in-fact for any person or corporation public or private;

"5. To act either by itself or jointly with any natural person or persons as administrator of the estate of any deceased person whose domicile was within the county in which the corporation is located or whose domicile is outside of the state of Nebraska, or as executor under the last will and testament, or as guardian, curator or conservator

Generally speaking, the powers given under this section are to act as fiduciary (trustee, administrator, executor, guardian, curator, conservator), or as representative (agent, attorney in fact), or as assignee, receiver, trustee, and depositor; to borrow and lend money; to deal in negotiable and non-negotiable securities; to conduct safety deposit vaults. Section 8068 (subdivision "1") and sections 8071–8074, inclusive, make clear that "depositor," as used in section 8068 (subdivision "2"), does not mean to accept deposits in a banking sense, but to conduct safety deposit vaults and to act as a "depository for money in court." In many important respects relating to organization and regulation, the two articles reveal different treatment of "banks" and of "trust companies," based upon differences in the character of business. For example, banks must be under the guaranty fund which protects only depositors (section 8024) and is ultimately based upon the average deposits (section 8026), while trust companies make a deposit of securities with the department of trade and commerce of specified amounts, related to capitalization (section 8071), which deposit is "primarily liable" for its obligations

"as guardian, curator, executor, administrator, assignee, receiver, trustee, either by appointment of court or under will, and for depository of money in court" (section 8074).

Also, although section 8068 gives trust companies most, if not all, of the powers usually exercised by a bank or enumerated in sections 7983 and 7985 of article 17, *except receiving deposits*, section 8068 forbids any trust company "to conduct the business of banking, as defined in Title V, Article XVII" (8068, as amended by Session Laws, 1927, at page 162, c. 35, § 2), and section 7985 makes it unlawful (with exceptions not here material) to transact a banking business except by those complying with article 17.

A consideration of the above articles and sections therein convinces that companies organized under article 19 are not banking corporations in the meaning of the state statutes, in the commonly accepted meaning, nor in the meaning of the Bankruptcy Act. Therefore, this company was subject to bankruptcy.

## II. Return of Property Not Owned by Bankrupt.

In so far as property is concerned, the prime purpose of the Bankruptcy Act (11 USCA) is to distribute the property of the bankrupt (except exemptions) to the creditors. That purpose is carried out by the collection and disposition of all such property and the distribution of the proceeds thereof among the creditors. In the collection of such property there often arise questions as to the title of or rights and interests of the bankrupt in specific portions of that property. This necessitates determination thereof by some court. As the Constitution gives Congress power to occupy the entire field of bankruptcy, the question is, What has Congress declared as to the court or courts in which such contests shall be litigated? Taubel-Scott-Kitzmiller Co. v. Fox, 264 U. S. 426, 430, 44 S. Ct. 396, 68 L. Ed. 770. Section 2 of the Bankruptcy Act, subdivision "(3)" (11 USCA § 11) empowers courts of bankruptcy to appoint receivers, and, through them, "to take charge of the property of bankrupts." Subdivision "(7)" of that section empowers such courts to "cause the estates of bankrupts to be collected * * * and determine controversies in relation thereto, except as herein otherwise provided." Sections 23, 60(b), 67(e), and 70(e), 11 USCA §§ 46, 96(b), 107(e), 110 (e), set forth the jurisdiction of bankruptcy and other courts where there is some dispute

---

of the property of any infant, insane person, idiot, habitual drunkard or person under any other disability, or as trustee for any person or of the estate of any deceased person under the appointment of any court of record having jurisdiction of the estate of such person;

"6. To loan money upon real estate, not to exceed forty per cent. of the appraised value, and upon collateral security, whom the collateral would of itself be a legal investment for the said corporation; and to borrow money and to execute and issue its notes payable at a future date, and to pledge its real estate, mortgages, or other securities therefor. No loan shall be made to any officer or director of said corporation.

"7. To buy, hold and own and sell government, state, county, and municipal bonds, bonds issued under the Federal Farm Loan Act, stocks, warrants, bills of exchange, notes, mortgages, and other investment securities, negotiable and non-negotiable, except bonds the interest on which has been in default for a period of two years next preceding the date of purchase, stocks of any corporation that have not earned annual dividends of at least four per cent. per annum for at least three years just prior to the date of such purchase and stock of any corporation organized under this article;

"8. To purchase, own or rent real estate needed in the conduct of the business and to erect thereon buildings deemed expedient and necessary, the cost of such real estate and buildings not to exceed forty per cent. of the paid-up capital stock; to purchase, own and improve such other real estate as it may be required to bid in under foreclosure or in payment of other debts; and

9. To perform all acts and exercise all powers connected with, belonging to or incident to, or necessary for the full and complete exercise and discharge of the rights, powers and responsibilities hereinbefore granted, and all provisions of this article shall be liberally construed. None of the powers hereby granted shall extend to or be construed to authorize any such corporation to conduct the business of banking, as defined in article XV."

as to title or interest in property. It has required judicial construction to state the criterion of jurisdiction set out in these various sections. That criterion is now firmly established to be the possession at the time the bankruptcy petition is filed. Chicago Board of Trade v. Johnson, 264 U. S. 1, 11, 44 S. Ct. 232, 68 L. Ed. 533; Taubel-Scott-Kitzmiller v. Fox, 264 U. S. 426, 432, 44 S. Ct. 396, 68 L. Ed. 770; Logan v. Haynes, 11 F. (2d) 369, 370, this court. If such possession be in the bankrupt, the court of bankruptcy has jurisdiction, by summary proceedings, to adjudicate the rights of the parties; while, if such possession is elsewhere, the adjudication must be by plenary suit in the proper federal or state court, if the claimant objects to a summary proceeding in the bankruptcy court. This rule has been so often announced that it is necessary to cite only the latest cases, among which are Harrison v. Chamberlin, 271 U. S. 191, 193, 194, 46 S. Ct. 467, 70 L. Ed. 897; May v. Henderson, 268 U. S. 111, 115, 45 S. Ct. 456, 69 L. Ed. 870; Chicago Board of Trade v. Johnson, 264 U. S. 1, 11, 44 S. Ct. 232, 68 L. Ed. 533; Taubel-Scott-Kitzmiller v. Fox, 264 U. S. 426, 431–438, 44 S. Ct. 396, 68 L. Ed. 770.

"As every court must have power to determine, in the first instance, whether it has jurisdiction to proceed, the bankruptcy court has, in every case, jurisdiction to determine whether it has possession actual or constructive" (Taubel-Scott-Kitzmiller v. Fox, 264 U. S. 426, 433, 44 S. Ct. 396, 399, 68 L. Ed. 770) "for the purpose of ascertaining whether the summary remedy is an appropriate one" (May v. Henderson, 268 U. S. 111, 116, 45 S. Ct. 456, 458, 69 L. Ed. 870).

"The possession, which is thus essential to jurisdiction, need not be actual. Constructive possession is sufficient. It exists * * * where the property is held by one who makes a claim, but the claim is colorable only" (Taubel-Scott-Kitzmiller v. Fox, 264 U. S. 426, 432, 44 S. Ct. 396, 398, 68 L. Ed. 770), or where the property is "held or acquired by others for account of the bankrupt" (May v. Henderson, 268 U. S. 111, 115, 45 S. Ct. 456, 458, 69 L. Ed. 870). The bankruptcy court may determine whether the claim is colorable only or substantial, or how the property is held, "for the purpose of ascertaining whether the summary remedy is an appropriate one." May v. Henderson, 268 U. S. 111, 115, 116, 45 S. Ct. 456, 458, 69 L. Ed. 870. In such determination, the bankruptcy court does not undertake to pass upon the merits of a claim further than to ascertain if the allegations as to the claim are only "colorable" or are "adverse," or if such allegations show the property is held "for account of the bankrupt." May v. Henderson, 268 U. S. 111, 115, 45 S. Ct. 456, 69 L. Ed. 870. If such claim is only colorable or the property is so held for account of the bankrupt, the bankruptcy court has jurisdiction, summarily, to "direct an accounting and a payment over to the trustee or receiver appointed by the bankruptcy court." May v. Henderson, 268 U. S. 111, 115, 45 S. Ct. 456, 458, .69 L. Ed. 870.

From the above authorities, it is clear that the bankruptcy court had jurisdiction to determine that this property was or was not "adversely" held by the appellant; that such determination must rest upon the allegations of the claimant; and that, if such allegations be insufficient, a summary order of delivery might be made. The question is whether the allegations here are sufficient.

There is no dispute as to the character of the possession here. Appellant claims no right in himself to this property. He claims as the agent of the department of trade and commerce. The possession is only under the statutes of Nebraska. The statute (Session Laws of 1927, p. 162, c. 35, § 3, amending section 8077 of the Compiled Statutes of Nebraska, 1922) provides that, if any of several enumerated situations arise, the department may bring an action "for the purpose of having such corporation adjudged insolvent and its business wound up," and that, "if in such suit the Court shall find that the said Trust Company is insolvent, it shall enter a judgment of such insolvency and order that the business of said corporation shall be wound up." And the department of trade and commerce shall thereupon become the liquidating agent to wind up the business of said corporation "and vested with title to the property" for that purpose. The return of appellant to the show cause order shows that such an action had been filed; that the bankrupt admitted insolvency therein; that the court found insolvency; that the property was taken over by the department for liquidation, and he was given possession and holds possession only as "liquidating agent" for the department. This is purely a liquidating statute. The possession of appellant is alleged to be and is only as a "liquidating agent" under such statute. Such statute is analogous, in purpose and effect, to state statutes governing assignments for the benefit of creditors. For the matter here involved, the possession of appellant is entirely analogous to that of an assignee for the

benefit of creditors under state law. It has been directly determined that such assignee is not an "adverse" holder and may be required, by summary order, to turn over property so held to the bankruptcy official, May v. Henderson, 268 U. S. 111, 115, 45 S. Ct. 456, 69 L. Ed. 870; Galbraith v. Vallely, 256 U. S. 46, 41 S. Ct. 415, 65 L. Ed. 823; Randolph v. Scruggs, 190 U. S. 533, 536, 23 S. Ct. 710, 47 L. Ed. 1165; Louisville Trust Co. v. Comingor, 184 U. S. 18, 22 S. Ct. 293, 46 L. Ed. 413; Bryan v. Bernheimer, 181 U. S. 188, 21 S. Ct. 557, 45 L. Ed. 814; Boese v. King, 108 U. S. 379, 385, 387, 2 S. Ct. 765, 27 L. Ed. 760; In re Rathman, 183 F. 913, 922, this court; Davis v. Bohle, 92 F. 325, this court; In re Friedman Bros., 19 F. (2d) 243, 245 (Minn. D. C.); In re Diamond's Estate, 259 F. 70, 74 (C. C. A. 6); In re Neuburger, 240 F. 947, 948 (C. C. A. 2); In re Stewart, 179 F. 222, 225 (C. C. A. 6); In re Gutwillig, 92 F. 337 (C. C. A. 2); also see International Shoe Co. v. Pinkus, 278 U. S. 261, 268, 49 S. Ct. 108, 111, 73 L. Ed. 318, where the court says that "the Bankruptcy Act superseded the state law, at least in so far as it relates to the distribution of property. * * *" Since appellant held only as a "liquidating agent" it would seem clear that, under the above decisions, he did not hold adversely to the bankruptcy receiver, but held on account of the bankrupt, and therefore the bankruptcy court had jurisdiction, by summary order, to require the property so held to be turned over to the receiver.

■■ Great emphasis is placed by counsel upon the argument that the property in question is purely that as to which the bankrupt's possession was only that of trustee, etc.; that the bankruptcy court has no jurisdiction to administer such property, and that the appellant has. Administration of property by a bankruptcy court involves several elements. One of these is collection of the property of the bankrupt. In that sense, the bankruptcy court has jurisdiction (as above shown) to administer on all property in actual or constructive possession of the bankrupt at the time the petition is filed. Such jurisdiction is the power to determine what title or right or interest the bankrupt may have therein and to make orders in pursuance of such determination. This exists irrespective of the character of title, right, or interest claimed therein by others, and has often been exercised where the claim was that the bankrupt held as trustee. A few of such cases are Equitable Trust Co. of N. Y., Trustee, v. First Nat. Bank, 275 U. S. 359, 48 S. Ct. 167, 72 L. Ed. 313; Cunningham, Trustee, v. Brown,

265 U. S. 1, 11, 44 S. Ct. 424, 68 L. Ed. 873; Schuyler v. Littlefield, 232 U. S. 707, 34 S. Ct. 466, 58 L. Ed. 806; and the following in this court: In re Horigan Supply Co., 2 F. (2d) 791; In re Blue Bird Appliance Co., 292 F. 127; Central State Bank v. McFarlin, 257 F. 535; Macy v. Roedenbeck, 227 F. 346, L. R. A. 1916C, 12. The matter involved in this order is not whether specific property is trust property and should be turned over by the bankruptcy court to some one, but it is the matter of jurisdiction—determination of what court shall determine what property shall be turned over, to whom it shall be turned over, and under what, if any, conditions it shall be turned over. State of Missouri v. Angle, 236 F. 644, 652, this court. Pending such determination, it may order the custody of the property to be turned over to its receiver in order that it may be conserved pending such determination. It may do this and do it by summary order, because the possession of appellant is not adverse, but is the constructive possession of the bankrupt.

It should be stated that the receiver proceeded in a proper manner. He requested possession from appellant; then requested, informally, an order from the state court upon appellant, and, thereafter, formally applied for such order. Only after meeting refusal in each instance did he apply for this summary order. Both appellant and the state court were given an opportunity to do what should have been done. It is unfortunate that differences of opinion should result in such conflicts, but, where they occur, the issues must be squarely met, and there can be no question of the precedence of the Bankruptcy Act nor of the duty of the federal courts to sustain that act and the jurisdiction, rights, and duties thereunder.

■ The return makes a further issue of adverse possession in relation to "property sufficient to cover all expenses incurred in the administration of said Peters Trust Company, pursuant to authority of the District Court of Douglas County, Nebraska." It is settled that expenditures made or expenses incurred by an assignee prior to the filing of the petition in bankruptcy may be an adverse claim (May v. Henderson, 268 U. S. 111, 119, 45 S. Ct. 456, 69 L. Ed. 870; Galbraith v. Vallely, 256 U. S. 46, 41 S. Ct. 415, 65 L. Ed. 823; Louisville Trust Co. v. Comingor, 184 U. S. 18, 22 S. Ct. 293, 46 L. Ed. 413), and the same principle would apply as to this appellant. However, it is necessary to make a proper claim. Such claim must

contain facts which may be a predicate for ascertaining what part of the property should be turned over as not affected by the claim and what should be left alone as subject thereto. The bare assertion, as here, that there is *something* due for such expenditures or expenses is not sufficient. The result of permitting such would be to delay turning over of *any* property until there had been an adjudication, in a plenary suit, of the rights of the claimant. Such interference with and delay of administration in bankruptcy cannot be tolerated and might be easily made the means of defeat or embarrass bankruptcy proceedings. It should not be difficult for the claimant to state; with fair approximation, the amount of his claim. Where he does not see fit to do so, it may fairly be thought that he cannot do so, because such claim does not exist, and his claim therefor may be regarded as colorable only. We think such should be the rule and such claim regarded as not adverse for jurisdictional purposes. While this is determinative of the jurisdictional question, it will not prevent the claimant, if he can make his claim specific, from presenting it in the bankruptcy proceeding. Galbraith v. Vallely, 256 U. S. 46, 49, 41 S. Ct. 415, 65 L. Ed. 823; Randolph v. Scruggs, 190 U. S. 533, 23 S. Ct. 710, 47 L. Ed. 1165. If he has lost ground, it is entirely because of his own failure to sufficiently state his claim.

### The Greenfield Appeal.

December 17, 1929, Henry Greenfield filed an intervening petition in the bankruptcy proceeding. This was succeeded, on January 2, 1930, by a "substituted and amended petition." The latter petition raised substantially the same issues as the return of Gamble to the show cause order. Intervener was a holder of several interest-bearing certificates of deposit issued by the company and a creditor thereof.

A feature touched upon in the Gamble return, and much more emphasized by Greenfield, is that proper protection to creditors will fail because of the personnel of the receiver and of his counsel. The attack is really centered upon the counsel because of their alleged connection with the bankrupt prior to bankruptcy. Of course, a receiver in bankruptcy and his counsel should be entirely without interest or embarrassing connections so far as any party to the bankruptcy proceeding is concerned. It is the duty of the court to see that such is the situation. Any party interested may present his views and proofs thereon to the court. The court

dismissed this intervention because the substituted and amended petition contained no allegations sufficient "to justify the relief asked therein." The memorandum opinion of the court does not mention this matter. It is probable that the court's attention was mainly drawn to the more strongly urged matters of jurisdiction. We think this matter can, in this situation, be best handled by leaving it open to either of these parties or to other interested parties to bring such to the attention of the court after the objector has become a party to the bankruptcy proceeding and, therefore, is able to show his interest in the administration in the bankruptcy court. The affirmance of the orders in these appeals is without prejudice to such procedure.

### Conclusion.

We conclude that the court had jurisdiction to and properly did make the orders from which these two appeals are taken, and its action is affirmed. The mandate will issue forthwith.