COMMERCIAL TRUST COMPANY OF NEW JERSEY, APPELLANT, v. HUDSON COUNTY BOARD OF TAXATION ET AL., RESPONDENTS.

Argued November 25, 1914—Decided December 9, 1914.

1. The act approved March 31st, 1914, to regulate the assessment and collection of taxes upon shares of capital stock of banks, banking associations and trust companies (*Pamph. L.* 1914, *p.* 141), does not violate the constitutional rule, because such property is made a class by itself for purposes of taxation and is taxed by a uniform rate in lieu of the variant rates that prevail in different taxing districts, for the reason that the property so taxed has peculiar characteristics justifying the making of it a class by itself for the assessment and collection of taxes.

2. Where words used in a statute have received a judicial construction, the legislature will be deemed to have used them in the sense that has been thus ascribed to them.

3. Where two interpretations of the language of a statute are possible, the one that renders the act constitutional will be deemed to express the legislative intent, rather than the interpretation which would render it unconstitutional.

4. The act of March 31st, 1914 (*Pamph. L., p.* 141), by the fourth section, provides that the tax imposed upon the shares of stock of banks, banking associations and trust companies, by the act, shall be in lieu of all other state, county or local taxation upon such shares, and the fact that a given savings institution has capital stock issued, does not violate the uniform rule of the constitution, because such savings bank by reason of its shares of .capital stock is either within the act or else it is subject to the general laws relating to the taxation of such institutions provided by the act approved March 26th, 1888. *Pamph. L., p.* 264.

On appeal from the Supreme Court, whose opinion is reported in 86 *N. J. L.* 424.

For the appellant, *Gilbert Collins, John R. Hardin* (*Fisk & Fisk* on the brief).

For the respondents, *Herbert Boggs, Carlton B. Pierce* (*James J. Murphy* on the brief).

The opinion of the court was delivered by

GARRISON, J.   This appeal brings up for review the judgment of the Supreme Court affirming the constitutionality of the act for the taxation of shares of bank stock approved March 31st, 1914. *Pamph. L., p.* 141.

The matter was presented to the court below by a writ of *certiorari* heard by Mr. Justice Swayze, whose opinion covers the several grounds of attack made by the prosecutors upon the constitutionality of the legislation in question.

The fuller arguments that have been made by eminent counsel before this court and the make-up of the court itself, by force of which unanimity and even decision at times is reached along variant and yet converging lines of thought, render it desirable that the very able opinion delivered in the court below should be in some respects supplemented and in others modified in order that it may express the grounds upon which the decision there reached is here affirmed; and this, it is believed, can best be done in the form of a memorandum that shall suggest such modifications, following in a

general way the order in which the respective topics are treated in the opinion.

1. Upon the fundamental question of the validity of the classification, upon which the generality of the taxing act in question depends, we regard the view expressed in the opinion as sound. It may be well to say, by way of parenthesis, that the expression that such classification was "forced upon the state" by federal legislation, ought not to be misleading in view of the context which clearly shows that what was meant was that the fixed status of national banks as established by federal legislation was a determinate factor for the consideration of the state legislature when framing a taxing act that included shares of stock in such banks, and that the adoption or inclusion of such factor as the basis of a classification otherwise valid was not an arbitrary act.

While, as has just been said, we regard the exposition of the opinion as to the validity of the classification as entirely sound, we also think that such validity should be rested directly upon the inherent characteristics possessed by the selected class with reference both to the special mode of assessment provided and the imposition of a fixed rate of taxation. With respect to both of these essential elements, shares of stock in banking institutions have inherent characteristics that so clearly differentiate them from all other sorts of taxable property as to take them out of such ordinary methods of taxation and place them in a class by themselves for legislation that shall in other respects comply with the constitutional requirements.

These peculiar characteristics are imparted to such shares by the unique nature of the corporate business from which both their status as property and their value as such are derived. The unique nature of the corporate business that is thus reflected in the property of the holders of shares therein is that the earning capacity that constitutes at once the property of the shareholder and its value is derived not, as in other business enterprises, from the production of wealth, e. g., mining or farming, or from the manufacture or barter of commodities as in ordinary commerce, but from dealing

directly in the medium of exchange itself, money, to wit, by which the value of all other sorts of property is gauged and measured whether for the purposes of exchange or for those of taxation. Between such a common measure of values and the property that is measured by it the difference is as great and as plain as that between a yardstick and the cloth it measures; and nowhere is this difference as significant as in the taxation of the only sort of property in which the thing to be measured and the measure itself are rolled into one, as is the case with shares of stock in moneyed capital—that is to say, in the business of banking, which is essentially the business of making money breed money. Other activities not directly connected with this essential one, such as the collection of drafts, the issuing of currency, the safe-keeping of valuables or the management of estates, are engaged in by one or another of the class of institutions we are considering, but it is a fact beyond any question that in regard to the real business of a bank the value of its shares depends to an enormous extent upon the profits that accrue from the lending out of money by the discounting of notes or the purchase of commercial paper. So that broadly speaking we may say that the profits of a banking company upon which the value of its stock depends are derived from the lending of money greatly in excess of its capital. Even a bank, however, cannot lend what it has not got and hence the borrowing of money in order to have it to lend must be included in any adequate description of the business of banking, the sums so borrowed being called deposits.

But the borrowing of money however called creates a debt and if the purpose be to lend it again at a profit we have as rules of these moneyed institutions: The greater the debt the greater the profit and the greater the profit the greater the value of the stock.

This, however, is not peculiar to these institutions and is not now insisted upon saving as it explains the non-deduction of the debts of a bank in fixing the value of its shares, as to which its bearing is obvious.

What is insisted upon is the utter inapplicability to shares in such a business of the ordinary method of assessing property for taxation, which, as is well known, consists in the establishment of a "ratable," *i. e.*, the determination of the property to be taxed and its value and the application to such ratable of the tax rate of the taxing district in which its owner resides. It requires neither argument nor illustration to demonstrate the total inapplicability of such a method to the assessment of property, the value of which resides in the profits made by the mere turn-over of money without the presence or the production of anything that remotely resembles a "ratable" or that is capable of performing the functions of one. The paramount importance of this marked peculiarity amply justifies the segregation of such property into a class by itself for the purposes of constitutional legislation with respect to its assessment and taxation.

It remains only to consider whether or not the basis upon which such classification rests justifies also the imposition upon the true value of the segregated property of a fixed uniform rate in lieu of the variant rates that prevail in the different taxing districts of the state. The underlying principles by which this question is answered in the affirmative were thoroughly thrashed out thirty or more years ago in the Railroad Tax cases; and in the most recent of such decisions (*Long Dock Co.* v. *The State Board of Assessors*, 78 *N. J. L.* 44), the principles especially pertinent to the matter in hand were restated in the opinion that was adopted by this court (79 *Id.* 604).

The application of these principles to the present case is obvious if for "the peculiar value imparted to property by its use under a railroad franchise" we substitute the peculiar value imparted to shares in a banking business by the unique nature of such business. In either case the "uniform rule" of the constitution is both required and satisfied.

2. As to the question of true value, we think the opinion is eminently sound under two well-established rules for the construction of statutes; the first of which is that where the words used in a statute have received a judicial construction

the legislature will be deemed to have used them in the sense that had been thus ascribed to them; and the second of which is that of two interpretations of the language of a statute the one that renders the act constitutional will be deemed to express the legislative intent.

3. Upon the question of deductions for debts, which is not presented either as an actual case or even as a supposititious one arising upon the face of the statute, we have nothing to add to the opinion excepting to say that statutes for the performance of governmental ·functions, which will not be invalidated by the courts upon an agreed state of facts, are equally immune where in lieu of facts figmentary possibilities are made the basis of attack and also that if possible the meaning given to this provision should be within the object expressed in the title of the act. As to the supplement to the General Tax act (*Pamph. L.* 1914, *p.* 353), we frankly admit that our knowledge is not of such a nature as to enable us to say that this act does not mean what the court below thought that it meant.

4. The alleged impairment of the National Banking Act, which raises a federal rather than a constitutional question, may well be left to the federal decisions as it is in the opinion.

5. As to double taxation, which also is not a constitutional question, we think that the statute under review by the last clause of its fourth section expressly provides against such a result.

6. As to the isolated case of the Paterson Savings Institution, we do not think that the fact that by its original act of incorporation (*Pamph. L.* 1869, *p.* 1265) this institution was authorized to issue shares of capital stock invalidates the classification upon which the statute under review is based, even if· such shares have at the present time their original character, whatever that may have been. We do not question the soundness of the legal principle applied by the court below to the extension of the corporate existence of this concern, but prefer to express no opinion upon that topic in the absence of the party most vitally affected. This, however, does not prevent us from reading in the general

act under which such extension was granted the express provision that "every such savings bank shall be subject to such general laws on the subject of taxation as shall apply to other savings banks." *Pamph. L.* 1888, *p.* 264.

If this be so, the present classification is unaffected by the fact that this savings institution has shares of stock, whereas, if it be not so, such institution falls within the classification of the statute; in neither event is the validity of the statute affected.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, TRENCHARD, BERGEN, MINTURN, KALISCH, BLACK, BOGERT, VREDENBURGH, WHITE, HEPPENHEIMER, WILLIAMS, JJ. 13.

*For reversal*—None.