[Civil No. 3972.   Filed July 5, 1938.]

[81 Pac. (2d) 86.]

STATE TAX COMMISSION and STATE BOARD OF EQUALIZATION, FRANK LUKE, THAD M. MOORE and D. C. O'NEIL, as Members of the State Tax Commission and State Board of Equalization; COUNTY BOARD OF EQUALIZATION OF MARICOPA COUNTY and BOARD OF SUPERVISORS OF MARICOPA COUNTY, and GEORGE FRYE, JOHN A. FOOTE and C. WARREN PETERSON, Members of said Board of Equalization and Board of Supervisors; J. D. BRUSH, County Assessor of Maricopa County, and HARRY M. MOORE, County Treasurer and Ex-officio Tax Collector of Maricopa County, Appellants, v. YAVAPAI COUNTY SAVINGS BANK, a Corporation, and YAVAPAI COUNTY SAVINGS BANK, a Corporation, Trustee, Appellees.

Mr. Joe Conway, Attorney General, Mr. Allan K. Perry, his Special Assistant, for Appellants State Tax Commission, State Board of Equalization, Mr. Frank Luke, Mr. Thad M. Moore and Mr. D. C. O'Neil, as members of such Boards; Mr. John W. Corbin, County Attorney, Mr. Lin Orme, Jr., his Deputy, for Appellants County Board of Equalization of Maricopa County and Board of Supervisors of Maricopa County, and Mr. George Frye, Mr. John A. Foote and Mr. C. Warren Peterson, as Members of such Boards; Mr. J. D. Brush, County Assessor of Maricopa County, and Mr. Harry M. Moore, County Treasurer and Ex-officio Tax Collector of Maricopa County.

Messrs. Favour & Baker, and Mr. A. M. Crawford, for Appellees.

LOCKWOOD, J.—Yavapai County Savings Bank, a state bank having its principal place of business in Prescott, Arizona, and hereinafter called plaintiff, brought this action to enjoin the enforcement of a certain tax assessment placed upon it. The state tax commission, the boards of supervisors of Maricopa and Yavapai counties, and the assessors and treasurers of such counties were made parties defendant to the action. Judgment went in favor of the plaintiff in the trial court, and this appeal was taken.

The facts of the case are not in serious dispute, and we state them as follows: The plaintiff is, and has been for many years, a savings bank, with its principal place of business in Prescott, Arizona, and as such bank it has made loans in various parts of the state, among them being Maricopa county. The only part of its business which it conducts in Maricopa county is as follows: having made certain loans on property in that county, and become the owner of some of the properties upon which the loans were made, through foreclosure or otherwise, it has maintained an office in Maricopa county, where it has an agent whose sole business, so far as plaintiff is concerned, is to make collections upon its outstanding loans, contracts of sale and leases, look after the physical condition of its property, and advertise it for sale on terms fixed by plaintiff. He receives no deposits, pays out no money to depositors, makes no loans nor contracts of sale nor leases, all of the business of this nature being done only in Prescott, where all the records, securities and documents of the plaintiff are kept. In 1936 plaintiff made a return to the state tax commission, showing its capital surplus and undivided profits to be of a book value of $161,451.81. A copy of this was furnished to the assessor of Yavapai county who, in conformance with the orders of the commission, reduced the total by

25 per cent., and set up $121,088.86 as the cash value of plaintiff's shares of stock for assessment purposes in 1936. The county assessor for Maricopa county, for the same tax period, listed certain real estate and personal property in Maricopa county belonging to plaintiff, and fixed an assessed value thereon of $91,795 as against plaintiff. In addition thereto, he made an assessment against the shares of stock of the bank of the same amount. Plaintiff protested to the tax commission and to the officials of Maricopa county that the assessment of real and personal property was void as being a tax upon the assets of a banking corporation, and contrary to the provisions of section 3069, Revised Code 1928, and that the assessment of the shares of stock was also void, inasmuch as plaintiff had not, during the year 1936, conducted a banking business in Maricopa county, and that any assessment whatever in Maricopa county was a duplication of the assessment already made in Yavapai county, and to that extent constituted double assessment, and resulted in a total valuation greater than the full cash value of the stock of plaintiff. Thereupon this action was brought against the taxing authorities who are parties hereto, and judgment was prayed for in the alternative, (a) that the Maricopa county assessment be stricken, and any further assessment by that county be restrained, (b) that the officials of Yavapai county be restrained from making any change in the assessment on the assessor's rolls, and (c) as an alternative relief that if the Maricopa county assessment were held to be valid, then that the assessment in Yavapai county be reduced by the amount of the assessment in Maricopa county. The court, in its judgment, in substance declared that any assessment in Maricopa county on the real and personal property of the plaintiff was void; that the assessment on the stock in the sum of $91,795 was void, but found that plaintiff maintained an office

in Maricopa county where it collected interest upon loans, and leased and sold real estate; that the total assessment of the stock of the bank, being $121,088.86, should be divided between the counties of Maricopa and Yavapai in the proportion that the assets of the plaintiff in Maricopa county, being $91,795, bore to its total assets, which were found to amount to $1,063,-952.65. From this judgment the tax commission and the taxing officers of Maricopa county appealed, the officers of Yavapai county apparently being perfectly satisfied. The appealing defendants set up eight assignments of error, while the appellee-plaintiff presents two cross-assignments of error.

There are substantially two questions involved upon the appeal, one raised by the cross-assignments, and the other by the assignments. The first is whether or not plaintiff was subject to taxation at all in Maricopa county, and the second whether if it was so subject, upon what basis that assessment should be made. We consider the first question.

The Civil Code of 1887 contains the following provisions in that portion devoted to the subject of taxation:

"2630. (Sec. 4.) Nothing in this act shall be construed to require or permit double taxation. . . . "

"2633. (Sec. 7.) Shares of stock in a corporation possess no intrinsic value over and above the actual value of the property of the corporation for which they stand and represent and the assessment and taxation of such shares and also of the corporate property would be double taxation. Therefore all property belonging to corporations shall be assessed and taxed, but no assessment shall be made of shares of stock, nor shall any holder thereof be taxed therefor."

In 1893, however, the legislature, by chapter 85 of the session laws of that year, adopted the following provision in regard to the taxation of bank stock:

"Section 1. That hereafter all the shares of stock of every bank or banking association, whether organized

under authority of any law of this Territory, or any other State or Territory, or any Act of the Congress of the United States (and all the capital stock of every person, association, or other corporation whatever, engaged in the business of banking, buying and selling exchange, and receiving deposits) shall be assessed and taxed in the county where such bank or banking association, or corporation is located for the transaction of business. . . . ''

The reason for this change is obvious upon a consideration of the nature of the assets of a banking corporation as compared with the assets of the ordinary business institution. The latter is generally not only the legal, but the equitable, owner of all of the property standing in its name, in the same manner as the ordinary individual, and it is, therefore, but just that it should itself pay the taxes upon all of its assets in the same manner as any individual. But, as is pointed out in section 2633, *supra,* the shares of stock of such a corporation have no value whatever in and of themselves, but merely show the relative proportions of the ownership of the property of the corporation by its various stockholders, in the same manner that a deed conveying property to half a dozen tenants in common has no value in and of itself, but merely shows the respective interests of the tenants in common in the physical property. Therefore, to tax the physical property of the ordinary corporation, and to again tax the stock of such corporation would be double taxation in the same sense as to tax a man's home for its full value, and then to tax the deed, which is evidence of his title to the home, at the same valuation. This was clearly recognized by the legislature of 1887, and the taxing of shares of stock in an ordinary corporation forbidden as being double taxation.

A banking corporation, however, stands upon a different basis. The ordinary method of formation of such an institution is through the contribution, by

its incorporators, of a certain amount of cash which is represented by the capital stock. The bank then receives deposits from all who choose to do business with it in that manner, which are repayable to the depositors, either upon demand or at a fixed time, in accordance with the rules of the bank, and these funds, together with those contributed by the incorporators, are loaned out by the bank from time to time. It is true that the legal title to the deposits is in the bank. the relation between it and its depositors being that of debtor and creditor. *Brown* v. *State,* 25 Ariz. 518, 220 Pac. 225. But while it holds the legal title to the deposits, it is responsible to its depositors for every penny thereof, and the property which it may purchase with such deposits, or the loans which it may make therewith, are primarily security for their repayment, the only real interest of the bank therein being such profit as it may make by the transaction. It, therefore, appears that while the assets which stand in the legal name of the bank may amount to many thousands, or even millions, of dollars, it is in reality a trustee for the benefit of its depositors for the vast majority of such assets, and its only property, from an equitable standpoint, is the amount contributed for its capital stock, plus the profits which have not yet been divided, or such portion thereof as has been carried to a surplus account. That this is true is shown by the fact that the valuation at which stock in a bank is usually purchased and sold bears little or no relation to its *assets,* but a very close one to its capital, surplus and undivided profits. The statute of 1893, recognizing this situation, provided for the taxation of banks upon the value of their capital stock and not upon their assets. The situs of this tax was the place where the bank was located for the transaction of business. At that time most, if not all, of the banks of Arizona were separate institutions, but banking prac-

tice was beginning to develop so that branch banks appeared, and it was soon decided that if a corporation had various branch banks in different counties of the territory, it would be unfair that the entire taxable value should be given a situs in one county alone. By chapter 27 of the laws of 1909, it was provided as follows:

"3840 A. (Sec. 10A) Every such association or corporation for the purpose of said assessment shall be considered as located in any and every county wherein it has located an office for the purpose of *carrying on a banking business* and the shares of stock of such association or corporation shall be subject to taxation in the manner hereinbefore provided, in any county wherein it has such office located. Provided, however, that if, with the statement hereinbefore mentioned, the president, cashier or other officer, shall state that his association or corporation is subject to taxation in more than one county of this Territory under the provisions of this chapter and shall further state the proportion of its assets situated in each county, then the shares of such association or corporation shall be subject to taxation in each county for only such portion of their value as the assets of the association or corporation situated in that county bear to the assets of the entire corporation." (Italics ours.)

Under this section the stock of a bank which conducted a banking business in more than one county was subject to taxation in each county, the method being set up in the section. This method was by finding the proportion which the assets of the bank in each county bore to its total assets, and then dividing the total valuation of the shares for the purpose of assessment in the same proportion. Again the assets themselves were not subject to taxation, but merely furnished a basis for a division of the value of the capital stock.

In 1913 the same law was carried forward in substance, with the exception that the provisions of sec-

tion 2633 of the Civil Code of 1887, *supra,* were now omitted, presumably for the reason it was the statement of a proposition so axiomatic and obvious that it was considered no longer necessary to repeat it.

In 1928 the general provisions of the Code of 1913, in regard to the taxation, were repeated, but with this exception, that instead of stating that banking corporations were subject to taxation in every county "wherein it has located an office for the purpose of carrying on a *banking business*" section 4852, Civil Code of 1913 (italics ours), was changed to read "wherein it has an office for the purpose of carrying on *its business.*" Sec. 3071, Revised Code 1928 (italics ours), and the following language was added:

" . . . When a bank maintains branches or conducts business in more than one county, city or town, the assessed value of the capital stock shall be apportioned among the several counties, cities and towns in which the main office or such branches are maintained or business conducted, and the amount apportioned to each county, city or town shall not be less than the actual cash value of the real and personal property of such bank situated in such county, city or town."

It is the position of plaintiff that taking the history of the statute into consideration and the fact that we have repeatedly declared that a mere change of language in the 1928 Code, shall not be considered as changing the meaning of the law as it previously existed, unless it clearly appears that such was the intent of the legislature, unless it conducts a "banking business" in Maricopa county, that its stock has no situs whatever there for the purpose of taxation, and that the evidence shows conclusively that it has never conducted any banking business, within the true meaning of the words, within that county.

It is the position of defendants that the evidence shows that plaintiff does come within the meaning of

the statute requiring a division of the valuation of its stock for the purpose of assessment.

We are of the opinion that the meaning of section 3071, Revised Code 1928, so far as the point under discussion is concerned, is the same as that of the corresponding provisions of the Code of 1913. It is hardly reasonable to believe that the legislature, which in 1909 and 1913 showed clearly by its language that it was intended to apply to what is commonly called "branch" banking, would have used the language "its business" instead of "banking business" with reference to banking institutions if it had meant instead "any portion" of its business. We are of the opinion that in order for a banking corporation to be subject to taxation in a county where its principal office is not located, that it must transact in such county what, standing by itself and with no connection with the parent institution, would be properly defined as a "banking business."

What then is the test of a banking business? In 3 R. C. L. 374, we find the following test:

"1. . . . The usual attributes of the banking business are receiving deposits, making collections and loans, discounting commercial paper and issuing notes for circulation, . . . 'having a place of business where credits are opened by the deposit or collection of money or currency, subject to be paid or remitted upon draft, check or order, or where money is advanced or loaned on stocks, bonds, bullion, bills of exchange or promissory notes, or where stocks, bonds, bullion, bills of exchange or promissory notes are received for discount or for sale' . . . Strictly speaking the term 'bank' implies a place for the deposit of money, as that is the most obvious purpose of such an institution. . . . "

7 C. J. 477, sec. 5, defines banking in this language:

"Banking . . . as defined by law and custom consists of receiving deposits payable on demand, discounting commercial paper, making loans of money

on collateral security, issuing notes payable on demand and intended to circulate as money, collecting notes or drafts deposited, buying and selling bills of exchange, negotiating loans, and dealing in negotiable securities issued by the national or state government, or by municipal or other corporations. . . . ''

and similar definitions are found in many cases. *Nassau Bank* v. *Jones,* 95 N. Y. 115, 47 Am. Rep. 14; *Reed* v. *People ex rel. Hunt,* 125 Ill. 592, 18 N. E. 295, 1 L. R. A. 324; *Wells Fargo & Co.* v. *Northern Pac. Ry. Co.,* (C. C.) 23 Fed. 469; *Oulton* v. *German Sav. & Loan Soc.,* 17 Wall. 109, 84 U. S. 109, 21 L. Ed. 618; *Weed* v. *Bergh,* 141 Wis. 569, 124 N. W. 664, 25 L. R. A. (N. S.) 1217. These definitions differ in their terms, but it will be found that there is at least one element appearing in each and every one of them—a bank is an institution which receives and pays out deposits. Indeed, section 4850, Revised Statutes Arizona (Civil Code) 1913, apparently recognizes this as an essential part of the banking business, for it says:

'' . . . And all shares of stock of every bank, and banking company, corporation, and association, wheresoever and howsoever organized, engaged in the business of receiving deposits and of buying or selling exchange. . . . ''

■■ We hold, therefore, that an institution which receives and pays out no deposits in a given county is not, within the meaning of the definition of the term as it is generally used, carrying on a ''banking business'' within that particular county. The evidence shows conclusively that plaintiff, if this be true, was never engaged in such business within the county of Maricopa. The trial court, therefore, erred in finding that it was subject to taxation at all in that county. The proper situs of all of its capital stock for taxation was obviously in the only county where it con-

ducted a banking business, to-wit, the county of Yavapai.

Such being the case, the judgment of the superior court of Yavapai county is reversed, and the case remanded with instructions to enter judgment in accordance with the opinion expressed herein.

McALISTER, C. J., and ROSS, J., concur.