[Civil No. 4342.   Filed June 30, 1941.]

[114 Pac. (2d) 883.]

THE VALLEY NATIONAL BANK OF PHOENIX, Appellant, v. APACHE COUNTY, COCHISE COUNTY, GILA COUNTY, GRAHAM COUNTY, MARICOPA COUNTY, MOHAVE COUNTY, PIMA COUNTY, PINAL COUNTY, and YAVAPAI COUNTY, and D. C. O'NEIL, FRANK LUKE and THAD MOORE, as Members of and Constituting the State Tax Commission and State Board of Equalization of the State of Arizona, Appellees.

Messrs. Gust, Rosenfeld, Divelbess, Robinette & Coolidge, for Appellant.

Mr. Joe Conway, Attorney General, for Appellee State Tax Commission.

Mr. M. V. Gibbons, County Attorney, for Apache County.

Mr. John Pintek, County Attorney, Mr. Alfred C. Stoddard, Mr. John F. Ross, and Mr. Henry Beumler, Deputy County Attorneys, for Cochise County.

Mr. Edward Y. Weeks, County Attorney, and Mr. Frank E. Tippett, Deputy County Attorney, for Gila County.

Mr. Max T. Layton, County Attorney, for Graham County.

Mr. Richard F. Harless, County Attorney, and Mr. Leslie C. Hardy, Deputy County Attorney, for Maricopa County.

Mr. J. Mercer Johnson, County Attorney, and Messrs. Conner & Jones, Special Counsel, for Pima County.

Mr. W. C. Truman, County Attorney, and Mr. Ronald J. Ellis, Deputy County Attorney, for Pinal County.

LOCKWOOD, C. J.—This is an action by Valley National Bank of Phoenix, a corporation, plaintiff, against Apache, Cochise, Gila, Graham, Maricopa, Mohave, Pima, Pinal and Yavapai Counties, and D. C. O'Neil, Frank Luke and Thad Moore, as members of and constituting the state tax commission and state board of equalization of the state of Arizona, defendants.

The facts set forth in the amended complaint necessary for a determination of the appeal may be stated as follows: Plaintiff is a banking corporation having its principal place of business in Maricopa county, and branches in each of the other counties defendant. On January 1, 1937, the assets of the bank amounted to something over $35,000,000, being composed of real and personal property, cash, and various intangible securities. These assets were located in the several counties in which it maintained banking houses, in amounts as shown by the complaint, 14.51% thereof being in the city of Tucson, in Pima county. The tangible assets of plaintiff were distributed among the several counties in different proportions, that in Pima county having a book value of some $396,000, which was almost 50% of the total value of such assets. It had outstanding common capital stock of 65,000 shares distributed among approximately 425 shareholders, and 198,400 shares of preferred stock of the par value of $6.25 a share, all of which was owned by the Reconstruction Finance Corporation of the United States of America. Between January 1 and the first Monday in May, 1937, an officer of plaintiff made and delivered to each of the assessors of the respective counties defendant a statement showing various facts regarding the ownership and value of plaintiff's stock, and the proportion of its assets situate in each of the counties defendant and the respective incorporated cities and

towns of said counties. After the filing of these statements, the different county assessors fixed values on that portion of the common capital stock of plaintiff which was by law required to be assessed in their respective counties. The method of arriving at such valuation was different in the different counties. The valuations fixed by the assessors of Pinal and Yavapai counties were acceptable to plaintiff and no objection was made to them either before the county boards of equalization or before the state board. The value fixed by the assessor of Greenlee county was not acceptable, but the amount of the tax was so small that plaintiff voluntarily paid it as assessed without protest. The assessors of Apache, Gila, Maricopa, Graham, Mohave, Cochise and Pima counties fixed valuations on a different basis, and these valuations were protested with the county boards of equalization of each of said counties, but the protests so made were overruled. On August 4 plaintiff filed with the state board of equalization written objections to the valuations made on its stock in each of the counties where protests had been made as aforesaid, and urged that it had been valued at an amount in excess of its actual cash value and that thus there had been discrimination between plaintiff's stock and other kinds of property. The board had previously notified plaintiff that it proposed to increase the assessments made by the assessors of Pinal and Yavapai counties, and plaintiff appeared and objected to such increase. After all this, and before the final adjournment of the board, it reviewed the statement filed by plaintiff in regard to its stock and assets and determined the actual cash value of all of plaintiff's common stock to be $880,448.01. After making this valuation the state board then apportioned the assessment among all of the counties defendant. In so doing it apportioned to each county

and the municipalities thereof the percentage of the total assessment aforesaid which the assets of plaintiff in said county and municipality bore to the total valuation of its common stock fixed by the board as above, with the exception that it did not fix the value of the stock assessable in the city of Tucson on this basis, which would have amounted to $127,753, but allowed the assessment attributable to that city, as made by the county assessor, to stand at the sum of $333,460, which was the reasonable valuation of the real and personal property owned by plaintiff in that city. The result of this method of apportionment was that while the total valuation of all the common stock of plaintiff had been fixed by the state board at $880,-448.01 as above, the total amounts apportioned to the different counties defendant, when added together equalled $1,086,154. In other words, the separate apportionments added together amounted to more than $200,000 in excess of the value fixed by the board on all of the stock. Thereafter taxes were levied in accordance with the apportionments made by the state board as aforesaid, and plaintiff paid them under protest, and then brought this suit, asking that it be adjudged that there has been collected from it taxes on a valuation of $205,705.99 in excess of the actual cash value of its stock, and that plaintiff be entitled to recover from the counties which had received such taxes in excess of the true amount due them.

The counties demurred each specially and generally to the complaint and pleaded in bar that the proper and exclusive method provided by law for testing the amount of the assessment and the validity of the tax involved in plaintiff's action was by appeal from the orders of the state or county boards of equalization, under the provisions of either sections 73–110 or 73–419, Arizona Code 1939; that plaintiff had failed to fol-

low either of these methods, and it had thereby waived any objection it might have to the taxes involved herein. The demurrers were sustained, and plaintiff electing to stand on its amended complaint as aforesaid, judgment was rendered in favor of defendants, whereupon this appeal was taken.

There are two questions before us. The first is whether plaintiff has chosen the proper remedy to present its objection to the tax in question, and, second, if it has, is it entitled to recover the excess taxes which it claims to have paid. Both questions involve an investigation of certain portions of our tax laws. The procedural question is determined by the interpretation of three sections of the code of 1939, which read so far as material as follows:

"73–110. *Appeal from state board of equalization.* Any taxpayer dissatisfied with the amount of his assessment as fixed by the tax commission or as reviewed by the board, may appeal therefrom as herein provided, and not otherwise. . . . "

"73–419. *Appeal from board.*—Any person dissatisfied with the amount of his assessment as fixed by the [county] board, may, on or before the fifteenth day of September following, appeal to the superior court of the county in which said board holds its sessions, . . . "

"73–841. *Contest of taxes—Injunction—Recovery and refunds.*—No person upon whom a tax has been imposed under any law relating to taxation shall be permitted to test the validity thereof, either as plaintiff or defendant, unless such tax shall first have been paid to the proper county treasurer, together with all penalties thereon. No injunction shall ever issue in any action or proceeding in any court against this state, or against any county, municipality, or officer thereof, to prevent or enjoin the collection of any tax levied. After payment an action may be maintained to recover any tax illegally collected and if the tax due shall be determined to be less than the amount

paid, the excess shall be refunded in the manner hereinbefore provided."

This action is obviously brought under section 73–841, *supra,* and it is the claim of plaintiff that this is the only proper method of seeking relief under the circumstances involved herein. It is the position of defendants that this is an attempted review of the "amount of his assessment . . . as reviewed by the board," and that section 73–110, *supra,* gives the exclusive remedy when the objection is to the amount of the assessment as fixed by the state board of equalization.

In the case of *State Tax Commission* v. *Yavapai County Savings Bank,* 52 Ariz. 374, 81 Pac. (2d) 86, we discussed the general principles of taxation applying to banking interests and pointed out that what was assessed was not the property to which the bank held a legal title, but the capital stock of the corporation itself. Under our law, therefore, any particular real or personal property to which a bank holds title is not subject to taxation except indirectly as its value appears in the value of the capital stock of the bank. So long as banks had no branches but conducted business solely in one place, no question could arise such as appears in the present case. When, however, branch banking came into vogue it was quickly seen that it would be unfair that one community should receive all the taxes on the capital stock of a bank when its earnings and value were in reality based upon its operation in many places. The legislature, therefore, adopted chapter 27 of the Laws of 1909, section 10A of which originally read as follows:

"Every such association or corporation for the purpose of said assessment shall be considered as located in any and every county wherein it has located an office for the purpose of carrying on a banking business and the shares of stock of such association or

corporation shall be subject to taxation in the manner hereinbefore provided, in any county wherein it has such office located. Provided, however, that if, with the statement hereinbefore mentioned, the president, cashier or other officer, shall state that his association or corporation is subject to taxation in more than one county of this Territory under the provisions of this chapter and shall further state the proportion of its assets situated in each county, then the shares of such association or corporation shall be subject to taxation in each county for only such portion of their value as the assets of the association or corporation situated in that county bear to the assets of the entire corporation.''

This was a clear, consistent, equitable and workable method for the division of the taxable value of the capital stock. When, however, the code was revised in 1928, it occurred to someone that where most of the physical assets of the bank were located in a particular county, that county should be entitled to an apportionment of the value of the capital stock at least equal to the physical value of the real and personal assets found in the county, and the legislature, apparently without considering the full effect of its action, added these words to section 10A of chapter 27, *supra:*

'' . . . When a bank maintains branches or conducts business in more than one county, city or town, the assessed value of the capital stock shall be apportioned among the several counties, cities and towns in which the main office or such branches are maintained or business conducted, and the amount apportioned to each county, city or town shall not be less than the actual cash value of the real and personal property of such bank situated in such county, city or town.'' Rev. Code 1928, § 3071.

The section as thus amended now appears, with minor changes, as section 73–206, Arizona Code 1939.

It appears from the complaint that after the state board of equalization had determined the total valuation of the capital stock of the bank as aforesaid, it apportioned the values of the stock, and, so far as all of the other counties, except Pima, are concerned, followed that provision of section 73–206, *supra,* which says: "The shares of such corporation or association shall be taxed in each county, city or town for *only* such portion of their value as the assets situated in that county, city or town bear to the assets of the entire corporation or association," (italics ours) but when it came to Pima county it apportioned to it an amount "not . . . less than the actual cash value of the real and personal property of such bank situated in such county, city or town." The result of this use of these two different yardsticks to apportion the total assessment of plaintiff was to bring the sum of the assessment in the several counties to a greater amount than the entire assessment of the capital stock, thus revising Euclid's old theorem that "the whole is equal to the sum of its parts" to read that "the whole is less than the sum of its parts." And it is this particular method of apportionment which is attacked by the present suit.

We agree with counsel for defendant Pima county that if the question involved were only one of the "amount of assessment," plaintiff would have been bound to proceed under section 73–110, *supra,* for it is made the exclusive method of questioning the amount of the assessment made by the state board of equalization. But plaintiff does not object to the amount of the assessment made by that board. It admits that was proper and correct. What it objects to is the *apportionment* of the assessment, and it contends that under the language of *Yuma County* v. *Arizona & Swansea R. R. Co.,* 30 Ariz. 27, 243 Pac. 907, 909, such

an objection to the legality of a tax is reviewable under sec. 73–841, *supra*. In that case we said:

"In *Arizona Eastern R. Co.* v. *Graham County*, 20 Ariz. 257, 179 Pac. 959, we used language that might be construed as limiting the right of action under paragraph 4939 to recover only when the law under which it was levied was invalid. We do not think such a construction justified as we believe the Legislature intended to give the taxpayer the right to test the validity of the tax upon any ground upon which he has not had an opportunity to be heard under other provisions of the law."

We agree with this contention. An assessment is defined as "a valuation of property for the purpose of taxation," while an apportionment is "the division of rights or liabilities among several persons entitled or liable to them in accordance with their respective interests." Webster's New International Dictionary, 2d Ed. There are a number of Arizona cases which, while not strictly in point, show to what a variety of circumstances the section is applicable. In *Calhoun* v. *Flynn*, 37 Ariz. 62, 289 Pac. 157, the action was brought under that section, the issue being whether it was exempt from all taxation. In *County of Maricopa* v. *Hodgin*, 46 Ariz. 247, 50 Pac. (2d) 15, 101 A. L. R. 793, the same section of the code was appealed to. There was no question as to the valuation of the property, but the issue was whether it was exempt from taxation to a certain extent. In *Oglesby* v. *Poage*, 45 Ariz. 23, 40 Pac. (2d) 90, again the question was of exemption and not of valuation. In *Powell* v. *Gleason*, 50 Ariz. 542, 74 Pac. (2d) 47, 114 A. L. R. 838, the issue raised was the constitutionality of the entire statute imposing the tax. In *State Tax Comm.* v. *Yavapai County Savings Bank*, *supra*, the point considered and determined by the court was whether

under the law the situs of the property for taxation was in Maricopa county.

We think, therefore, that this proceeding falls fairly within section 73-841, *supra,* and was the proper method to test whether the revision of Euclid above referred to can be considered to have been intended by the legislature. We consider then whether the board of equalization had the mandatory duty under the law of apportioning the taxable value of the capital stock to Pima county in an amount not less than the value of the real and personal property of plaintiff in said county.

It is clear upon an examination of section 73-206, *supra,* that there are two irreconcilable methods of apportionment set up therein. One reads, "The shares of such corporation or association shall be taxed in each county, city or town for *only* such portion of their value as the assets situated in that county, city or town bear to the assets of the entire corporation or association" (italics ours). The other says: "the amount apportioned to each county, city or town shall not be less than the actual cash value of the real and personal property of such bank situated in such county, city or town." In the case of Pima county it appears that the assets situate in Tucson are 14.51% of the entire assets of plaintiff. Under the first sentence above quoted the limit which can be placed on the taxable value of the stock apportioned to Tucson is approximately $127,000. But under the second it must equal the actual cash value of the real and personal property situate in Tucson, which is over $300,000. How can the state board of equalization follow both rules of apportionment? It is obviously impossible.

What we have here is a general principle of taxation established by the legislature which is to be applied by

two distinct special methods which are contradictory and irreconcilable. What is the law applicable to such a situation? There are several possible conclusions. The first is that section 73–206, *supra,* is void for uncertainty. The effect of such a conclusion would be to leave only the general rule for the assessment of banks, as provided by sections 73–204 and 73–205, Arizona Code 1939, in force, which would mean in effect that the entire capital stock of plaintiff was assessable only at its principal place of business, which is in Maricopa county, a situation clearly not intended by the legislature.

Another rule of construction which might be followed is that when two conflicting provisions appear in a law the last in point of arrangement prevails. 59 C. J. 999 and cases cited. If this construction be adopted, the first method of assessment by the proportion of assets found in each county should be stricken, leaving only the second in regard to the apportionment being not less than the value of the real and personal property. This method would perhaps be workable so long as the total physical assets of a bank did not exceed the value of its capital stock, although it might well result that the county in which a bank had the great majority of its total assets and business would receive a very small proportion of the taxes which it paid. If, however, at any time the total physical assets were greater than the entire value of the capital stock, it would be impossible to follow this method of apportionment.

The third construction would be to hold the last special method of apportionment void as in conflict with the intent of the legislature as set forth in the general rule for the assessment of banks, and leave the first method in force.

█ We have declared repeatedly that the most important principle of statutory construction is that

the intent of the legislature should be followed if possible. All other rules of construction are subsidiary, and of value only as they aid in determining that intent. It is obvious from the entire history of the special method of taxation applied to banks that it is, and always has been, the intent of the legislature that the tax should be upon the capital stock and not upon the physical assets, and that each community in which a bank does business should have a just proportion of the total taxes.

The method of apportionment first adopted, requiring that the valuation be divided among the various counties proportionately to the assets, is equitable, simple and always workable. The second method, obviously based in effect on the previously repudiated idea that banks should be assessed on the value of their physical assets, frequently, as in the present case, produces an absurd result and may often be absolutely impossible to carry into effect. It appears clear that the legislature, in adopting the second method of apportionment without repealing the first, could not have fully realized the effect of its action and would not have enacted it had it realized that situations such as the present one might arise.

We think this case presents a situation where the rule that the prior special clause should prevail over the last should be applied as being in harmony with the general rule of taxation provided by the legislature, and we hold, therefore, that the special clause providing for the apportionment of the capital stock according to the assets prevails over the one providing for the apportionment of not less than the value of the real and personal property. *Smith* v. *Board of Trustees,* 198 Cal. 301, 245 Pac. 173; *State* v. *Bates,* 96 Minn. 110, 104 N. W. 709, 113 Am. St. Rep. 612; *Commercial Trust Co.* v. *Hudson County,* 86 N. J. L. 424, 92 Atl. 263; Id., 87 N. J. L. 179, 92 Atl. 799; *State*

v. *Mulhern,* 74 Ohio St. 363, 78 N. E. 507, 6 Ann. Cas. 856; *State* v. *Board of Com'rs,* 94 Ohio St. 296, 113 N. E. 831; *Roseberry* v. *Norsworthy,* 135 Miss. 845, 100 So. 514.

The apportionment made to Pima county of the value of the capital stock of plaintiff by the state board was, therefore, illegal, and plaintiff having paid an excessive tax under protest is entitled to recover the excess in the manner provided by law.

There are other questions raised which we have considered, but in view of what we have already said we think it unnecessary to discuss them.

The judgment of the superior court of Pinal county is reversed and the case remanded with instructions to overrule the demurrers, and for such other proceedings as may be proper.

McALISTER and ROSS, JJ., concur.