**ROSENBLUM v. ANGLIM, Collector of Internal Revenue.**

**No. 21895–S.**

District Court, N. D. California, S. D.

March 31, 1942.

Samuel M. Samter and Richard S. Goldman, both of San Francisco, Cal., for plaintiff.

Frank J. Hennessy, U. S. Atty., and Esther B. Phillips, Asst. U. S. Atty., both of San Francisco, Cal., for defendant.

ST. SURE, District Judge.

The question for decision is whether money belonging to a nonresident alien, who was not engaged in business in the United States at the time of his death, was deposited here with a person engaged in the banking business, thus exempting it

from estate taxes under the Internal Revenue Act.[1]

The facts are undisputed. Max Rosenblum, a German citizen, came to the United States on a visitor's visa about ten months before his death. His home and place of business for many years had been in San Salvador, and he was not engaged in business in the United States at the time of his death. He died in California, on August 3, 1936, leaving property, part of which was in San Salvador and part in the United States.

In June of 1931 decedent had deposited a sum in excess of $112,000 with D. Hecht & Co., of San Francisco, an importing and exporting firm owned by Daniel Hecht, a cousin of decedent, and thereafter sent this firm money from time to time. He made withdrawals by drafts, which were honored by the firm. His capital was at his disposal "either wholly or in part at any time," and he received interest on the deposits. The firm rendered semi-annual accounts showing deposits and withdrawals and also charges for a number of small personal items purchased for decedent. Decedent kept a record of this account in a book showing his accounts with regularly established banking institutions in California.

It is admitted that D. Hecht & Co. was not licensed to do a banking business, and there is no showing that it handled similar accounts for other persons.

Plaintiff listed an item of $157,848.85 in the estate tax return, describing it as having been "deposited with D. Hecht & Co. as a person carrying on the banking business of the decedent who was not engaged in business in the United States at the time of his death," and claimed that it was therefore exempt. The Collector of Internal Revenue assessed a tax of $17,626.49 on this amount; the tax was paid, and within the proper time a claim for refund was filed and rejected.

Plaintiff contends that it was not the intent of Congress to require the deposit to be made in a licensed bank, and that if "the banking business" is not limited to persons licensed to engage in that business, it naturally follows that the words "any person carrying on the banking business" are to be given the construction "any person carrying on the banking business for decedent." In other words, plaintiff urges that the question is not the nature of the business carried on by D. Hecht & Co., but is the nature of the dealings of decedent with that company.

The only basis for plaintiff's statement that the words "for decedent" must necessarily be added to the phrase "any person carrying on the banking business" appears to be a misconception of the word Congress intended to be modified by the phrase "by or for decedent."

When all the pertinent language of the Act: "Any moneys deposited with any person carrying on the banking business, by or for a nonresident * * * ," is read together, it is clear that the words "by or for a nonresident" modify the word "deposited" and not the words "any person carrying on the banking business." No other construction is possible, because of the use of the word "by". Plaintiff could not maintain the construction "any person carrying on the banking business by a nonresident." Not only would this be ungrammatical, but the Act contains the re-

---

[1] Section 303(e) of the Revenue Act of 1926, 26 U.S.C.A. Int.Rev.Acts, page 232, provided in part:

"For the purpose of the tax the value of the net estate shall be determined * * *

"(e) The amount receivable as insurance upon the life of a nonresident decedent, and any moneys deposited with any person carrying on the banking business, by or for a nonresident decedent who was not engaged in business in the United States at the time of his death, shall not, for the purpose of this title, be deemed property within the United States."

Subsection (e) was amended by the Revenue Act of 1934, Section 403(d): "By striking out the phrase 'nonresident decedent' wherever such phrase appears in such subdivisions and inserting in lieu thereof in each case 'nonresident not a citizen of the United States'."

The amended section is set forth in 26 U.S.C.A. Int.Rev.Code, § 863:

"The following items shall not, for the purpose of this subchapter, be deemed property within the United States:

"(a) Proceeds of life insurance. The amount receivable as insurance upon the life of a nonresident not a citizen of the United States; and

"(b) Bank deposits. Any moneys deposited with any person carrying on the banking business, by or for a nonresident not a citizen of the United States who was not engaged in business in the United States at the time of his death."

quirement that the non-resident be not engaged in business in the United States at the time of his death.

Plaintiff states in his reply brief that the bill for the Act, as originally proposed in Congress in 1921, read in part: "and any moneys deposited in any bank, banking institution or trust company in the United States, by or for a non-resident decedent"; that at the legislative committee hearing the words "in any bank, banking institution or trust company" were stricken out, and the words "with any person carrying on the banking business" were substituted. Plaintiff also quotes language interpreting the bill which is made a part of House Resolution No. 8245: "Section 403 would exempt * * * any money deposited in the United States by or for a non-resident decedent." In the bill as originally proposed the words "by or for a non-resident decedent" cannot relate to any word but "deposited", and the substitution was surely not intended to change the entire construction of the sentence.

The language of a taxing statute will be given its usual and ordinary meaning, and cannot be strained beyond the breaking point in the interest of taxpayers. Merriman v. Commissioner, 1 Cir., 55 F.2d 879.

The question therefore resolves itself to whether D. Hecht & Co., on the basis of the firm's transactions with Mr. Rosenblum, was carrying on the banking business.

No cases have been found directly determining the scope of the words "any person carrying on the banking business" as used in the Act. There is dictum in Todd v. United States, Ct.Cl., 46 F.2d 589, indicating that the court considered that a firm which bought and sold securities in New York, borrowed money, paid interest, and took deposits from some of its clients on which it permitted them to draw checks, was not engaged in the banking business within the meaning of the 1924 Revenue Act. The basis of the court's decision was that the estate tax was proper because the money in question was loaned to individual members of the firm and not deposited with them. However, the court commented on the fact that the firm did not hold itself out to the public as a bank or banking institution and had not complied with New York banking laws.

The phrases "carry on business" and "the banking business" have on many occasions been construed by the courts. "The meaning of the phrase 'to carry on' when applied to business, is well settled. In Worcester's Dictionary the definition is: 'To prosecute; to help forward; to continue; as to carry on business.'" Cooper Manufacturing Co. v. Ferguson, 113 U. S. 727, 735, 5 S.Ct. 739, 28 L.Ed. 1137. In Ammons v. Brunswick, etc., Co., 8 Cir., 141 F. 570, 575, an action where the validity of a summons depended on whether the defendant corporation had done business in Indian Territory, the court adopted Webster's definition of "business", "(1) 'that which busies' or 'that which occupies the time, attention, or labor of one as his principal concern, whether for a longer or shorter time.' (2) 'Any particular occupation or employment engaged in for a livelihood or gain * * * '. (3) 'Mercantile transactions or traffic in general.'" The court comments, "All these definitions imply, if not express, the idea of some permanency or durability; something more than a single temporary or spasmodic undertaking."

In Allen v. Commonwealth, 188 Mass. 59, 74 N.E. 287, 288, 69 L.R.A. 599, the court says; "The word 'business' is of large significance, and 'denotes the employment or occupation in which a person is engaged to procure a living.'"

It was said in Lewellyn v. Pittsburgh, B. & L. E. R. Co., 3 Cir., 222 F. 177, 185, that "'Carrying on business' does not mean the performance of a single disconnected business act. It means conducting, prosecuting, and continuing business by performing progressively all the acts normally incident thereto." This language is cited with approval in Hutchings v. Burnet, 61 App.D.C. 109, 58 F.2d 514, 515.

In State of Kansas ex rel. Boynton v. Hayes, 10 Cir., 62 F.2d 597, the court said that the substance of the banking business is having a place of business where deposits are received and paid out on checks and where money is loaned on security. The court in Staunton Industrial Loan Corporation v. Commissioner of Internal Revenue, 4 Cir., 120 F.2d 930, said that one of the chief functions of a bank involves the receipt of deposits from the general public. Some of the cases give a broader definition. "Ordinarily the business of banking relates to dealing in money by receiving deposits, making loans, discounting commercial paper, making collections, and issuing bills and notes."

American Sugar Refining Co. v. Anderson, D.C., 20 F. Supp. 55, 56. In State Tax Commission v. Yavapai County Savings Bank, 52 Ariz. 374, 81 P.2d 86, 90, the Court said:

"What then is the test of a banking business? In 3 R.C.L. 374 we find the following test: '1. * * * The usual attributes of the banking business are receiving deposits, making collections and loans, discounting commercial paper and issuing notes for circulation, * * * *having a place of business where credits are opened by the deposit or collection of money or currency.'* * * *

"These definitions differ in their terms, but it will be found that there is at least one element appearing in each and every one of them—a bank is an institution which receives and pays out deposits." (Emphasis supplied)

■ While ordinarily the banking business involves more than the accepting and paying out of deposits, an institution which exercises only these two functions may be, as contended by plaintiff, carrying on the banking business, if these things are done as a regular business.

Plaintiff argues that any institution exercising the function of accepting money for deposit which may be drawn out for use by draft or bill of exchange is a bank in the strictest commercial sense. He cites as authority Oulton v. German Savings & Loan Soc., 17 Wall. 109, 118, 84 U.S. 109, 21 L.Ed. 618. In that case the court found that "the managers of the institution have a place of business where credits are opened by deposit, or collection of money or currency, subject to be paid or remitted by check or draft, or represented by certificates of deposit." The court held that these facts were sufficient to bring the institution within the provisions of the Internal Revenue Laws taxing bank deposits. The word "institution" as used by the court obviously referred to an establishment whose business it was to accept deposits. The use of the word "function" is also significant. Webster's New International Dictionary, 1931 Ed., defines "function" as "the nature and proper action of anything; * * * the activity appropriate to any business or profession."

Plaintiff also relies on MacLaren v. State, 141 Wis. 577, 124 N.W. 667, 668, 135 Am.St.Rep. 55, 18 Ann.Cas. 826, as authority that an institution "which is not a licensed bank or engaged mainly in the banking business, may, nevertheless, be engaged in the banking business." In this case Gimbel Bros., a large department store, maintained a "deposit purchase department." The public was permitted to make deposits up to $500, on which 4% interest was paid. Withdrawals could be made in cash or merchandise. At one time there were 5,915 depositors. The general manager was convicted of violating the banking law of Wisconsin, which defined banking as "the soliciting, receiving, or accepting of money on deposit *as a regular business* * * * " (emphasis supplied). The court quotes Morse on Banking, Volume 1, § 2, saying "that, in order to have a bank, 'it is essential that there should be a place where *as a regular business* the money of others is received on general deposit. * * * '" (emphasis supplied).

It is proper that a department store accepting deposits from the public as a regular business should be subject to banking regulations. However, this case is not authority that an isolated deposit would constitute the banking business. The language used by the court and the wording of the Wisconsin statute would indicate that D. Hecht & Co. would not be subject to prosecution under the Wisconsin banking laws for handling Mr. Rosenblum's account, since this was not a regular business of the firm.

■ Congress has shown a general intent to tax the estates of non-residents who are not citizens of the United States. 26 U.S.C.A. Int. Rev. Code, § 802. Therefore the statute under which plaintiff claims exemption from this tax must be strictly construed in favor of the Government. Bank of Commerce v. Tennessee, 161 U.S. 134, 146, 16 S.Ct. 456, 40 L.Ed. 645; Parrott v. Commissioner of Internal Revenue, 9 Cir., 30 F.2d 792, 794. In Heiner v. Colonial Trust Co., 275 U.S. 232, 235, 48 S.Ct. 65, 66, 72 L.Ed. 256, the court said: "Tax exemptions are never lightly to be inferred." Even if it may be said that the statute is ambiguous, this is not a sufficient basis for the claim. United States v. Stewart, 311 U.S. 60, 71, 61 S.Ct. 102, 85 L.Ed. 40; United States Trust Company v. Helvering, 307 U.S. 57, 60, 59 S.Ct. 692, 83 L.Ed. 1104, "The intent to exclude must be definitely expressed, where, as here, the general language of the act laying the tax is broad enough to include the subject-

matter." Choteau v. Burnet, 283 U.S. 691, 696, 51 S.Ct. 598, 601, 75 L.Ed. 1353.

■ I am of the opinion that D. Hecht & Co. was not "carrying on the banking business" within the purport of the taxing Act, and that the tax was properly imposed.