(No. 33539.—)

PAUL L. GORHAM, Appellee and Cross Appellant, *vs.* ORVILLE E. HODGE, Auditor of Public Accounts, *et al.,* Appellants and Cross Appellees.

*Opinion filed May 20, 1955.*

LATHAM CASTLE, Attorney General, of Springfield, (JOHN L. DAVIDSON, JR., MARK O. ROBERTS, and JOHN G. SMITH, of counsel,) for appellants.

TENNEY, SHERMAN, BENTLEY & GUTHRIE, of Chicago, and BROWN, HAY & STEPHENS, of Springfield, (HENRY F. TENNEY, KENNETH B. HAWKINS, and PAUL W. GORDON, of counsel,) for appellee.

GIFFIN, WINNING, LINDNER & NEWKIRK, of Springfield, (MONTGOMERY S. WINNING, and JAMES M. WINNING, of counsel,) for Illinois Savings & Loan League, *amicus curiae.*

Mr. CHIEF JUSTICE BRISTOW delivered the opinion of the court:

The defendants, the Auditor of Public Accounts, Director of Finance, and State Treasurer, respectively, of the State of Illinois, have appealed directly to this court from that portion of a decree entered by the circuit court of Sangamon County finding section 10.2 of the 1953

amendment to the Mutual Building, Loan and Homestead Associations Act unconstitutional and void, and enjoining the defendants from doing any act or thing for the purpose of carrying into affect or administering section 10.2. The plaintiff cross-appeals from that portion of the same order and decree which finds section 10.1 of the same act constitutional and valid and denies the prayer for injunction. The validity and constitutionality of a statute being involved, the appeal properly comes direct to this court.

Plaintiff, by leave of court, filed his complaint as a taxpayer for the purpose of challenging the constitutionality of "An Act to amend Sections 10, 18 and 29 of 'An Act in Relation to Mutual Building, Loan and Homestead Associations,' filed June 19, 1919, as amended, and to add Sections 10.1 and 10.2 thereto," approved June 29, 1953, and to enjoin the defendants as officials of the State from carrying into effect and enforcing the provisions of such amendatory act. Laws of 1953, p. 535; Ill. Rev. Stat. 1953, chap. 32, pars. 222.1 and 222.2.

The decree appealed from was entered after denial of defendants' motion to dismiss the complaint and the defendants' election to stand by their motion. Therefore no question of fact is raised and the only issues presented by the case are whether sections 10.1 and 10.2, added by the 1953 amendatory act to the Mutual Building, Loan and Homestead Associations Act as amended, are constitutional.

The constitutional attacks upon the statute in question are, first, that the amendatory act violates section 5 of article XI of the constitution of 1870 in that it gives banking powers to building and loan associations without having been submitted to a referendum as therein required; second, that the act violates section 13 of article IV of the constitution of 1870, in that it expresses a subject not embraced in the title of either the original act or the amendatory act; and third, that the statute is unconstitutionally vague, indefinite, uncertain and incomplete.

Section 10.1 of the amendatory act authorizes the issuance of guarantee or contingent reserve shares by building and loan associations, which is a new form of financing permitted for the first time by this amendment. The principal argument of plaintiff in its cross appeal as to the unconstitutionality of this particular section of the amendatory act is based upon the alleged invalidity of section 10.2 because of the banking power therein given to the associations without a vote of the people and that section 10.1, being a part of the same invalid act, must therefore also fail. Whether or not such is a valid contention of unconstitutionality can be determined only after the constitutionality of section 10.2 is determined.

Section 10.2 of the amendatory act grants to mutual building and loan associations a new power to issue so-called "Investment Certificates" to nonmembers of the association for a consideration of cash or cancellation of outstanding investment certificates. In substance, this section of the amendatory act provides that investment certificates may be issued with or without passbooks; that the holder shall have liability for debts or assessments, and upon liquidation shall receive payment in full before any payments to shareholders or stockholders; that the holders shall not participate in the profits or dividends; that the holders shall be paid or credited with interest; that no investment certificates shall be issued except for cash or cancellation of outstanding investment certificates of equal value; that bylaws of the associations may provide the plan for issuing investment certificates which may include paid-up, regular installment, optional or prepaid certificates; that provisions for withdrawal and enforced retirement relating to stock as set forth in sections 13 and 14 of the act shall also apply to investment certificates; that investment certificates may be owned jointly and loans may be made on them in the same manner as provided for making loans on shares under section 19.3 of the act; and that invest-

ment certificates shall be without a definite rate of interest but the rate or rates if classified shall be determined within 30 days before the beginning of each distribution period (with the exception of the first issuance of investment certificates when the rate of interest may be set within 30 days after such certificates are authorized) by the board of directors, the interest to be payable in cash or credit as provided in the investment certificate.

The primary contention as to the constitutionality of this section is based upon the proposition that said section grants mutual building, loan and homestead associations the power to receive deposits, which is a banking power within the meaning of section 5 of article XI of the constitution, and since the act was not submitted to a referendum as required thereby it is unconstitutional.

Section 5 of article XI of the constitution provides, so far as pertinent to this case, as follows: "No act of the general assembly authorizing or creating corporations or associations with banking powers, whether of issue, deposit or discount, nor amendments thereto, shall go into effect or in any manner be enforced unless the same shall be submitted to a vote of the people at the general election next succeeding the passage of the same, and be approved by a majority of all the votes cast at such election for or against such law."

Defendants-appellants aver that the trial court erred in holding section 10.2 of the amendatory act invalid because it does not create or grant a banking power of deposit but merely creates a specific method by which a building and loan association, for its own benefit and the benefit of its shareholders, may borrow money to effect its principal purpose, and also because the investment certificate procedure as authorized by said section involves neither an element of safekeeping nor an element of withdrawal at the option of the depositor and therefore does not qualify as a bank deposit.

The first question to be resolved is what is the meaning of a banking power of deposit as used in the constitution. The case of *Reed* v. *People ex rel. Hunt,* 125 Ill. 592, is the principal case in this jurisdiction construing the meaning of this particular constitutional provision. In the *Reed case* a proceeding was instituted to test the validity of an act of the legislature providing for the organization of saving societies, which act had not been submitted to a vote of the people. The only issue posed was the constitutionality of that act under section 5 of article XI of the constitution, the same as presented here. One section of the particular statute there in issue declared that no corporation organized under the act should be deemed a bank or company having or exercising banking powers. In passing upon this question the court said, beginning at page 595, "But these declarations do not affect the powers conferred, nor do they limit the authority of the corporation. Whether the corporation may be called a bank or not, is a matter of no moment. If any of the sections of the act, in plain and express words, confer banking powers, the character of the corporation is to be determined from the powers thus conferred, and not from the fact that some portions of the act declare that the corporation shall not be deemed a bank." And at page 596 the court continued to say, "There ought not, however, to be any serious difficulty in determining what was intended by the words, 'banking powers,' as used in the constitution of 1870. We think the language employed should be used in its common, ordinary sense, and when this is done, the banking powers referred to mean such as are ordinarily conferred upon and used by the various banks doing business in the country. The ordinary and usual powers exercised by banks are to discount notes and receive deposits. They may, and often do, possess other powers; but these are the ordinary and usual powers conferred upon and exercised by banks and bankers. * * * one of the chief characteristics and

one of the most essential elements of a bank, as that term is ordinarily understood, is that it is a place for the deposit of money." After discussing the cases of *Oulton* v. *Savings Institution,* 17 Wall. 117, and *Bank for Savings* v. *The Collector,* 3 Wall. 495, each of which determined that the corporations there in question were invested with the power to receive money on deposit and to discount notes, which were banking powers, the court examined the provisions of the act under which the institution was organized and noted that the various sections authorized it to receive sums of money for accumulation and safe-keeping and to invest, hold and repay the same, and to declare credit and pay dividends thereon, to make loans on real estate, to provide the mode under which a depositor might withdraw funds deposited under regulations to be established by the organization, to classify the depositors, and to make annual reports showing the amounts loaned out and also the liabilities due depositors. This court there finally concluded that the terms of section 5 of article XI of the constitution are general and prohibit any act creating a corporation with banking powers, whether such corporation has stockholders or not, unless the law shall be adopted by a vote of the people, and that the act under considertion granted banking powers of deposit and was unconstitutional.

In *McCormack* v. *Hopkins,* 287 Ill. 66, it became important for this court to distinguish between a loan and a deposit, which is the second question to be resolved. In that case, the suit was against a surety company to recover public funds deposited in a bank which later closed. The defense was that the money was deposited before the surety became bound on its bond. The deposit was represented by a certificate of deposit. The last certificate of deposit issued was subsequent to the execution of the bond. It was argued that the deposit was a loan to the bank and the loan having originally been made before the surety

executed its bond and not having been actually paid it did not come within the provisions of the bond. In distinguishing between a deposit and a loan we there said, beginning at page 70: "The certificate is called, on its face, a time certificate of deposit. It is in the usual form in which such certificates of deposit are issued by banks. It is not subject to check, is payable at a future time and bears interest. But these circumstances do not, of themselves, change the character of the transaction from a deposit to a loan. We take judicial notice that many banks allow interest upon time deposits, and even in some cases upon open checking accounts on the daily balances. It is true that we have held a certificate of deposit such as this to be, in effect, a promissory note and negotiable as such. [Citation.] It does not, therefore, cease to be a certificate of deposit and the transaction is not transformed into a loan. It has still the distinguishing features of the bank deposit that it is payable only upon demand at the bank and on the return of the certificate properly indorsed. The borrower of money who executes a promissory note for it is bound to seek his creditor and pay him, and a bank is not different in this respect from an individual. But a bank is not obliged to seek its depositors and pay them. 'Deposits are made in banks in accordance with universal commercial usage, which becomes a part of the law of the transaction. They are neither loans nor bailments in the strict sense of the term. A deposit is a transaction peculiar to the banking business and one that the courts should recognize and deal with according to commercial usage and understanding.' [Citation.] While the certificate of deposit is a promissory note and is negotiable, nevertheless the transaction out of which it arises is a deposit and not a loan. An ordinary deposit in the usual course of business, while it creates the relation of debtor and creditor, is not a loan to the bank. [Citations.] The word 'deposit,' according to its commonly accepted and

generally understood meaning among bankers and by the public, includes not only deposits payable on demand and subject to check, but deposits not subject to check, for which certificates, whether interest-bearing or not, may be issued, payable on demand or on certain notice or at a fixed future time. [Citations.] * * * Under the evidence this transaction was an ordinary deposit made in the usual course of business on a time certificate."

Thereafter, in *Emerson* v. *North American Transportation and Trading Co.* 303 Ill. 282, this court held that a certificate of deposit payable to the order of the plaintiff upon return of the certificate properly endorsed was not due until payment was thereafter demanded. In that case, the certificate had been issued March 31, 1900, at Nome, Alaska, and was not presented until December 13, 1916, in the Chicago office for payment, at which time payment was refused. In holding that a certificate of deposit payable to the depositor upon return of the certificate is not due until the certificate is tendered and demand for payment is made, the court quoted at length from the *McCormick case* above referred to, and followed the conclusion there reached that the borrower of money who executes a promissory note for it is bound to seek his creditor and pay him, and the bank is not different in this respect from an individual, but that a bank is not obliged to seek its depositors and pay them.

In determining whether an investment certificate issued under the challenged statutory provisions is a bank deposit or a loan, there are certain mechanical characteristics common to each which in and of themselves are not determinative of the issue, such as the fact that each is entitled to receive interest on the money advanced at a specified rate, each may get his money back, neither bears the primary risk of the business venture, interest payments by the association are deductible expenses, and there is no right either to dividends or to share in the management.

The law is concerned with the substance and not the form of the transaction, and the cases above referred to indicate that the answer as to whether this particular transaction is to be considered a deposit with the building and loan association or a loan to the building and loan association is to be determined by the rights of the holder of the certificate against the association and not by the name given to the transaction. If the investment certificate is not due and payable by the association and the statute of limitations does not start to run until such certificate is tendered to the association and demand made for payment according to the association bylaws, then the investment certificate must be considered a deposit. On the other hand, if the association is obligated to pay the investment certificate and the statute of limitations starts to run on a predetermined and fixed date without the holder of the investment certificate making any demand, then and in such event we must consider the investment certificate in the nature of a loan.

Section 10.2 provides that withdrawal and retirement of investment certificates shall be according to the procedures and provisions set forth in sections 13 and 14 of the act for withdrawal and enforced retirement of shares. Section 13 of the act specifies that upon withdrawal a member of the association shall be entitled to receive the full amount of dues paid in plus any allocated dividends, and provides for withdrawal in chronological order if there are insufficient funds with which to meet the demands of withdrawal. The section also prohibits checking accounts and has detailed provisions and regulations as to limitations and allocations on withdrawal payments in the event of insufficient assets. Section 14 merely provides that the board of directors of the association may, at their discretion, require a withdrawal and pay the full value of shares to the owners thereof. From the foregoing analysis, investment certificates, in substance, amount to nothing

more than a time deposit for which the association is liable to make repayment upon demand, within the limitations imposed by the bylaws on rights of withdrawal. There is no obligation on the association to make any repayment unless and until a demand therefor is made. No cause of action could accrue to investment certificate holders and no statute of limitations start to run until such investment certificate holder had made a demand for payment and such demand be disregarded contrary to the bylaws of the association.

The issuance of investment certificates as authorized by section 10.2 of the amendatory act constitutes receipt of deposits by the association from the general public, and it makes no difference whether the party is called a depositor, a time depositor, or an investment certificate holder. The law is concerned with the substance and not the form.

It is undisputed that the receipt of money for deposit is a banking function and therefore it must be concluded that this amendment confers a banking power upon mutual building, loan and homestead associations without submitting the amendment to a vote of the people, in violation of section 5 of article XI of the constitution of 1870. The decree of the circuit court of Sangamon County, finding such section unconstitutional and void must be affirmed.

In view of our findings and conclusions on the first assignment of error, it becomes unnecessary to consider the other grounds asserted for unconstitutionality of said section 10.2.

The plaintiff has filed a cross appeal from that part of the trial court decree holding section 10.1 of the 1953 amendment to the act in question constitutional. In support of the cross appeal it is argued that certain phrases contained in section 10.1 are so vague as to render the statute invalid. We have examined the questioned phrases and we do not find them ambiguous. It is not contended that section 10.1 embraces banking powers. But it is argued that

because section 10.2 does relate to banking powers, section 10.1 must also be held invalid because it was enacted as part of the same bill. It is said that the customary doctrine of separability is not applicable because section 5 of article XI reads *"No act* of the General Assembly authorizing or creating corporations or associations with banking powers, * * * shall * * * be in force unless the same shall be submitted to a vote of the people." No authority is cited in support of this argument, and we do not find it persuasive. The purpose of the constitutional provision has been fully served when that section of the statute which concerns banking powers has been invalidated. The constitution does not, we think, require a wanton invalidation of inoffensive portions of a statute because they happen to have been included in a bill which also contained a provision which could not become effective without a referendum.

The decree of the trial court is affirmed.

*Decree affirmed.*